[Civ. No. 2068.  Third Appellate District.—February 2, 1920.]

## T. B. FREDENDALL et al., Plaintiffs, v. JOHN SHRADER et al., Appellants; S. A. BURRELL et al., Interveners and Respondents.

[1] ACCOUNTING — REFERENCE — ISSUES FOR REFEREE. — The "whole issue" which the court is authorized, by section 639 of the Code of Civil Procedure, to direct a referee to hear and decide when the trial of an issue of fact requires the examination of a long account on either side refers to or means the account, and does not include other issues in the case or issues having no direct or immediate connection with the account.

[2] ID.—RIGHT TO ACCOUNTING—DECREE DETERMINING NOT ESSENTIAL PREREQUISITE TO A REFERENCE.—A preliminary order or decree adjudicating that one of the parties is entitled to an accounting is not an essential prerequisite to the proper exercise of the jurisdiction of the superior court to order a reference for the purpose of examining a long account and obtaining a report of the referee thereon.

[3] ID.—OIL CONTRACT OBTAINED THROUGH FRAUD—RIGHT TO MONEY JUDGMENT FOR DIFFERENCE BETWEEN PRICE PAID AND MARKET PRICE.—In an action by the stockholders of an oil corporation for the purpose, among other things, of having declared null and void a certain contract of sale of oil by the corporation to the persons named as the codefendants of the corporation and for an accounting by said codefendants of the money received by them for the sale of oil, the court having found that the contract whereby the corporation sold to said codefendants all the oil produced from the property leased by said corporation at a given rate per barrel was fraudulently obtained by said codefendants and with the purpose and intent of cheating and defrauding the stockholders of the corporation, a money judgment against said codefendants for the difference between the amount paid by them for the oil and the market value of the oil at the time it was received by them is authorized, notwithstanding it is not found that said codefendants received in money the market price of said oil.

[4] ID.—OFFSETS—BURDEN OF PROOF.—If said codefendants in the action to set aside the contract for the purchase of oil obtained by them through fraud and for an accounting as to the oils delivered to and received by them thereunder had any expenditures or claims which they could have legitimately set up in abatement of the amount for which the referee found they sold the oil, the burden was upon them to prove such expenditures or credits.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Davis, Kemp & Post for Appellants.

George L. Greer, Frank F. Oster and Alfred H. McAdoo for Respondents.

HART, J.—Plaintiffs, stockholders in the defendant corporation, El Dora Oil Company, brought the action for the purpose of having canceled certain deeds of trust and chattel mortgages given by said corporation to secure the payment of certain promissory notes, aggregating eighty-five thousand dollars, in favor of defendants, John Shrader and the Ohio Valley Construction Company, a copartnership, consisting of John Shrader, Henry M. Jackson, and J. L. Campbell; for the purpose of having delivered up and cancelled seventy-five thousand shares of the capital stock of said El Dora Oil Company, issued to the defendants Campbell, Jackson, and Shrader; for the purpose of having declared null and void a certain contract of sale of oil by the Oil Company to said last-named defendants; for an accounting by defendants of the money received by them for the sale of oil, and for certain other relief.

After the filing of the amended and supplemental complaint, S. A. Burrell, C. A. Bailey, W. H. Ballard, P. E. Stodley, Thomas Nestor, D. K. Cheever, John Glendening, Ida Otey, and Harry Clark, other stockholders of said Oil Company, by leave of court, filed complaints in intervention, in which they adopted the amended and supplemental complaint of plaintiffs as their complaint in intervention.

The trial occupied five days, ending on May 22, 1915. Prior to the commencement of the trial upon the issues involved in the case an order was made, on motion by plaintiffs, dismissing the action so far as they were concerned, and the issues were tried between the intervenors and the defendants. On June 8, 1915, an order of reference was made to Leo Longley, Esq., referee, to ascertain and report on certain things enumerated in said order of reference. On May 23, 1916, the referee filed a report, which was con-

firmed on May 24, 1916. On January 2, 1917, the court made findings, and judgment was entered in favor of interveners, granting them the relief asked for in the amended complaint, the allegations as to which are above set forth, and giving them a judgment against the defendants Shrader, Campbell, and Jackson, individually and as copartners under the firm name of Ohio Construction Company, in the sum of $105,406.25.

The court found that the trust deeds and the chattel mortgage referred to in the complaint were given without a consideration and that the contract, by the terms of which the El Dora Oil Company sold to the appellants all the oil produced by it on property under lease by it, was fraudulently obtained by the appellants, with the design to cheat and defraud the other stockholders of said company.

The appeal is by the defendants, other than El Dora Oil Company and E. S. Good, from said judgment. It is supported by a transcript containing the judgment-roll and a bill of exceptions. The only evidence brought up by means of the bill of exceptions is the order appointing the referee and the referee's report. The objections made by defendants to said order and report, together with a few recitals of proceedings at the trial, are also contained in the bill of exceptions.

The first contention of appellants is that the court had no jurisdiction to appoint a referee to make an accounting without making findings showing that the interveners were entitled to an accounting and making an interlocutory judgment.

The order of reference reads as follows:

"This cause coming on to be tried, and it appearing that the taking of an account is necessary for the information of the court before judgment thereupon, on hearing counsel for the respective parties;

"It is ordered that it be referred to Leo Longley, Esq., as sole referee, to ascertain and report:

"(a) The amount of money or credits received by defendants John Shrader, Henry M. Jackson, J. L. Campbell, Ohio Valley Construction Company, a copartnership, and Ohio Valley Construction Company, a corporation, or either of them, from the sale or disposition of oil pro-

duced from the property of defendant El Dora Oil Company.

"(b) The amount of money expended and paid out and to whom by defendant John Shrader in payment of just claims against and legal liabilities of defendant El Dora Oil Company.

"(c) The amount of the just debts and liabilities of defendant El Dora Oil Company guaranteed by, but not yet paid by defendant John Shrader.

"(d) The amount of the just debts and liabilities of defendant El Dora Oil Company guaranteed by, but not yet paid by defendant John Shrader, wherein creditors have released and discharged from liability said defendant El Dora Oil Company.

"Pursuant to the stipulation entered into in open court during the trial of this cause, by and between the interveners and defendants, it is further ordered that the referee herein named ascertain and report:

"(e) What shares of stock of El Dora Oil Company have been issued since February 12, 1912.

"(f) To whom said shares were issued and by what certificates evidenced.

"(g) For what consideration such shares were issued.

"(h) By what authority and pursuant to what resolution or resolutions of the board of directors such shares issued.

"And upon such report being confirmed according to the practice of this court, either party may bring on the cause for final judgment."

1. Section 638 of the Code of Civil Procedure provides: "A reference may be ordered upon the agreement of the parties filed with the clerk, or entered in the minutes:

"1. To try any or all of the issues in an action or proceeding, whether of fact or of law, and to report a finding and judgment thereon;

"2. . . . "

Section 639 of the same code provides: "When the parties do not consent, the court may, upon the application of either, or of its own motion, direct a reference in the following cases: 1. When the trial of an issue of fact requires the examination of a long account on either side; in which case the referees may be directed to hear and decide the whole

issue, or report upon any specific question of fact involved therein; 2. . . . ; 3. . . . ; 4. . . . "

It will be observed that under the section first above referred to the court is authorized to order the referee to try any and all issues, whether of law or of fact, in the action or proceeding in which the order of reference is made, and to report findings and judgment thereon. Thus the referee is practically vested with power to make a definitive disposition of the issues and the action, subject, of course, to the power of the court to reject or confirm his report, and this plenary power vested in the referee proceeds, of course, from the proposition, enunciated in the section, that the order of reference is made upon the agreement of the parties to the action or proceeding.

[1] By section 639 the power of the referee under the order of reference, in cases arising under the first subdivision of said section, is limited to the examination of a "long account," as to which the referee may, according as he may be by the court directed to do, either hear and *decide* (make findings on) the whole matter or issue, or report upon any specific question of fact involved therein. The whole matter or "issue" refers to or means the account, and does not include other issues in the case or issues having no direct or immediate connection with the account. (*Williams* v. *Benton,* 24 Cal. 424.)

There is, then, an important distinction between the power which may be exercised by a referee to whom a reference is made by agreement of the parties (section 638), and the power of the referee to whom a reference is made under section 639, in this: That, while under the first-mentioned section the referee may be directed and so authorized to report findings *and judgment* upon all the issues in the case, in the last-named section his power is restricted to the hearing and *decision* (or the finding) of the facts as to the account ordered by him to be examined.

The order of reference in this case appears to have been based partly on section 638 and partly on section 639. Those portions of the order embraced within paragraphs "a," "b," "c," and "d" of the order refer, it will be noted, to the account, and authorizes an examination by the referee of the account, while those embraced within paragraphs "e," "f," "g," and "h" were incorporated into

the order by agreement or stipulation of the parties, so that, if it might be said that the matters referred to in said last-mentioned paragraphs are not strictly involved in the account which the court upon its own motion ordered to be examined and reported on by the referee, the authority in the referee to examine those matters and make a report thereon nevertheless existed by virtue of the agreement between the parties that they might be gone into and reported on by that officer.

[2] Referring now, however, to the point urged by the appellants that the court was without jurisdiction to order a reference because it had not previously to the making of said order found that the interveners were entitled to an accounting and entered an interlocutory decree adjudicating that fact, the answer thereto is that the statute provides for no such preliminary formality. Moreover, the procedure adopted in this case with respect to the order of reference appears to be in accord with the customary practice which has in that particular prevailed in California for many years and which has received the approval of the supreme court. We need not examine specifically herein the cases which seem to confirm this statement. It will suffice merely to name some of them here, viz.: *Gunter* v. *Sanchez,* 1 Cal. 45, 48; *Smith* v. *Rowe,* 4 Cal. 6; *Grim* v. *Norris,* 19 Cal. 140, [79 Am. Dec. 206]; *Williams* v. *Benton,* 24 Cal. 425; *Jones* v. *Gardner,* 57 Cal. 641; *More* v. *Calkins,* 85 Cal. 177, 190, [24 Pac. 729].

Counsel for appellants cite *Fox* v. *Hall,* 164 Cal. 287, [128 Pac. 749], as an authority sustaining their position that it is an essential prerequisite to the proper exercise of the jurisdiction of the superior court to order a reference for the purpose of examining a long account and obtaining a report of the referee thereon to make and enter a preliminary or interlocutory adjudication that the plaintiff is entitled to an accounting. In that case the court said: "The facts alleged and proved showed the existence of a fiduciary relation sufficient to invoke the jurisdiction of a court of equity to compel an accounting, which, as the evidence shows, had been demanded of the defendant L. J. Hall. (Citing cases.) Upon such accounting, the burden would probably be upon the said defendant to establish any expenditures or credits upon which he might rely as offsets

to the gross income shown to have been received by him. (Citing cases.) But be that as it may, the plaintiffs were entitled to an accounting, and if the case had been submitted without further evidence, *an interlocutory judgment directing such accounting would have been proper.* (Italics ours.) The accounting might have been ordered through a reference, or the court might, *with or without a preliminary interlocutory order* (italics ours) have proceeded to state the account itself (citing cases), rendering such final judgment thereon as might appear to be proper.''

Those portions of the above language italicized constitute the entire predicate of the contention of the appellants that the case from which the language is taken supports the view that an interlocutory judgment adjudicating the right of plaintiff to an accounting is an essential prerequisite to an order of reference. But, while it is true that the court there says that upon the evidence therein an interlocutory judgment to that effect would have been proper, it does not say, nor is it necessary to be implied from the language of the court, that an order of reference without a previous express adjudication that the plaintiff is entitled to an accounting will render the act of ordering the reference void. The opinion does say, it will be noted, that the court might, in the absence of such an interlocutory order, itself have proceeded to take and state the account, and it seems to us that where an order of reference is made either on the court's own motion or upon the application of the plaintiff in the absence of the consent of the other party, the order of reference itself must necessarily be construed as involving nothing less than an adjudication that the plaintiff is entitled to an accounting. If, in other words, when the court itself proceeds to take the account, that act, under the decision in the case above named and quoted from, is itself deemed tantamount to or practically sufficient as an adjudication that the plaintiff is entitled to an accounting, then, *a fortiori,* an order of reference, made after some testimony addressed to the issues has been taken, as the record shows was the case here, either by the court *sua sponte* or upon motion of the plaintiff should be deemed such an adjudication or one to all intents and purposes. None of the evidence, save that involved in the report of the referee, has been certified up to this court—that is, the record

here contains no other evidence than that of the report of the referee—and we are, therefore, authorized to assume and, indeed, presume, that the testimony taken before and heard by the court prior to the making of the order of reference was sufficient to justify the court in concluding that an accounting was necessary to a just adjudication of the rights of the parties and that, therefore, it was proper and necessary to order the account to be referred to a referee for examination and a report by that officer of the result of such examination.

But, after all, if it be conceded that error was committed by the trial court in ordering a reference of the account before expressly finding and decreeing that the interveners were entitled to an accounting, such error involved a mere irregularity in procedure from which the appellants could not have suffered any prejudice. As above stated, the order of reference amounted substantially to a finding that, justly to decide and determine the rights of the parties, an accounting and for that purpose an examination of the account would be necessary; so it follows that in any event an examination of the account and a decision thereon would be required. Under these circumstances, the appellants cannot show or justly claim that they were in any way prejudiced by the action of the court in prematurely ordering a reference, assuming, for present purposes only, that such order was, according to the fair import of the statute, prematurely made. As to the report of the referee itself, it was subject to objection by appellants when the matter of its confirmation came up before the court. Considering, therefore, the error, if error it be, involved in the act of making the order here attacked with reference to and in view of the whole record before us, we thus find that there is no ground justifying the conclusion that a miscarriage of justice resulted from the error, and there is, therefore, no authority in this court to order a reversal for such error. (Const., art. VI, sec. 4½.)

[3] 2. It is next contended that there is no evidence to support a judgment against the appellants for any sum of money. This contention is based upon the fact that, while the referee found and reported the quantity of oil coming from the defendant, El Dora Oil Company, which had gone into the hands of appellants, Shrader, and those associated

with him, and the times at which they received the oil, and also the market value of the oil at the time it was received by said appellants, the referee did not find and report upon the proposition whether said Shrader and his associates received in money the market price for said oil at the place of production. The reply to this proposition is that the court found upon what we are required to presume, under the state of the record here, was sufficient evidence, that the contract whereby the El Dora Oil Company sold to Shrader, Campbell, and Jackson all the oil produced from the property leased by said company at the rate of twenty-five cents per barrel was fraudulently obtained by said Shrader et als., and with the purpose and intent of cheating and defrauding the stockholders of said company. It is further found that Shrader and his associates, subsequently to the execution of said contract, sold a large quantity of the oil so purchased from the El Dora Company. It is thus clear that, having wrongfully taken control of and sold the oil of the company, the appellants thereby became, as to said oil, involuntary trustees of the other stockholders and were, in analogy to the case of a conversion, chargeable with the market price of the oil at the time they sold the same. [4] But it is further contended that the evidence is insufficient to support a judgment for any money against the appellants for the reason that there is no finding by the referee with respect to any offsets which they might have had against the money so received by them. The answer to this contention is that, if the appellants had any expenditures or claims which they could have legitimately set up in abatement of the amount for which the referee found that they had sold the oil, the burden, upon the accounting, was upon them to prove such expenditures or credits. (*Fox* v. *Hall,* 164 Cal. 287, 291, [128 Pac. 749].) This rule follows from the proposition that a party claiming offsets to a claim against him is supposed to have full and complete information as to any offsets or credits he may be entitled to upon such an accounting, while, perhaps, the adversary party is without any knowledge whatever of such offsets. In this case it is manifest, from the situation as it is disclosed by the record, that the matter of offsets, if any existed, was one wholly within the knowledge of the appellants, and that the interveners

were entirely ignorant thereof. The report of the referee shows that, although the appellants were duly notified on all occasions of the place and times of the hearing of the account, that at no time made an appearance before the referee or at the hearings, and in no way aided the referee in his work of investigating and making a report on the account. Thus, it is obvious that, if they could have shown offsets, and desired to avail themselves of the benefit thereof, it was their duty to have appeared at the investigations by the referee and presented such offsets. Not having done so, it does not now lie in their mouths to complain of a failure of the referee to find as to that matter, or of any disadvantage they may have suffered from such failure.

3. It is lastly contended that the judgment, in so far as it decrees null and void for want of a consideration the trust deeds and the chattel mortgage mentioned in the complaint in intervention, is not supported by the findings. An examination of the findings as a whole will show, as thus we have been convinced, that the point is without merit.

The court found (finding 3) that the trust deed executed and delivered to one M. S. Platz by the El Dora Oil Company, in pursuance of a resolution passed on the twenty-ninth day of February, 1912, by the said company's board of directors, of which board the defendant, Shrader, was then a member, was so executed and delivered for the purpose only of securing said Shrader for any indebtedness then due or that might become due and owing to him from said company; that contemporaneously with the execution and delivery of said deed, promissory notes amounting in the aggregate to the sum of thirty-five thousand dollars were executed by the El Dora Company to and in favor of said Shrader, and that said deed of trust purported on its face to be security for the payment of said notes; that said notes did not, at that time, represent an existing indebtedness due from said company to said Shrader in the aggregate sum thereof, and that said notes and said deed of trust were intended as security for the repayment to said Shrader "of what indebtedness there might then be due said defendant, John Shrader, or that might in the future become so due and owing." The court also found that, after the above-mentioned transaction, in pursuance of a resolution adopted by its board of directors, the El Dora Company, through

its president, one E.. S. Good, and its secretary, the defendant Shrader executed a trust deed to one McGrath to secure repayment of a "pretended indebtedness of fifty thousand dollars" due from said company to the defendants Campbell, Jackson, and Shrader, and at the same time the said company, under the authority of the resolution referred to, and through said Good and said Shrader, president and secretary, respectively, of its board of directors, executed to and in favor of said Campbell, Jackson, and Shrader its promissory notes aggregating the sum of fifty thousand dollars, to repay which the said deed of trust was given. The court found that there was no consideration whatever for said last-mentioned deed of trust or for the promissory notes the payment of which said deed was given to secure. The court then found, by finding 23, as follows:

"That the defendants John Shrader, Henry M. Jackson, and J. L. Campbell, and Ohio Construction Company, have received from the sale or disposition of oil produced from the property of defendant El Dora Oil Company, up to December 31, 1913, money or credits to the extent and sum of $94,188.85, for which said defendants have made no accounting and against which said defendants have no claim, credit, or offset, except in the sum of $7,076.24."

Thus this situation is presented by the findings above considered: 1. That, as to the trust deed and the promissory notes representing the purported thirty-five thousand dollars indebtedness, the court finds that that transaction or the notes did not represent an existing indebtedness, but any indebtedness to accrue only in the future. As to this finding we may here pause to observe that there is no express finding that a "future indebtedness" did not accrue before the commencement of this action against the company in favor of Shrader, and that, if taken alone, or without reference to finding 23, said finding 3 would not be sufficient to support the judgment as to that particular transaction; 2. That the court finds that there was no consideration whatever to support the transaction involving the giving of the notes for the aggregate sum of fifty thousand dollars and the trust deed executed for the purpose of securing payment of said notes; 3. That, instead of the El Dora Company being indebted to John Shrader in any sum whatever, John Shrader and his associates, Campbell, Jack-

son, and the Ohio Construction Company, under which name the said three appellants, as copartners, conducted and carried on business, were indebted to the El Dora Oil Company in the sum of $94,188.85, less a credit of $7,076.24, and the interest on said indebtedness up to December 31, 1913, bringing the total indebtedness at the time of judgment up to the sum of $105,406.25.

We must assume that if there was evidence showing that anything was due John Shrader and his associates, or either of them, from the El Dora Company by reason of any of the transactions referred to in the findings above considered, the court would have made a finding thereon and due and proper allowance of the amount as a credit or offset against the amount of money found to have come into their hands from the sale of the company's oil. Indeed, on the record before us, the presumption is that all the findings derive sufficient support from the evidence adduced at the trial, and, considering the findings by the light of each other, or as a whole, they amply support the conclusion of law by the court that the thirty-five thousand dollar transaction, involving the execution of the promissory notes aggregating that sum by the El Dora Company to Shrader, and the deed of trust and the chattel mortgage given as security for said notes, "should be decreed to be null and void and of no effect."

It follows, of course, that the judgment, in so far as it decrees said notes, trust deed, and mortgage null and void, is buttressed by sufficiently supported findings and conclusions of law.

There are no other points presented here for our consideration.

The judgment appealed from is affirmed.

Ellison, P. J., *pro tem.*, and Burnett, J., concurred.