Filed 03/23/17.

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES R. LINDSEY, as Trustee, etc., et al., <br><br>     Plaintiffs and Respondents, <br><br>        v. <br><br> ALIEU B. M. CONTEH et al., <br><br>     Defendants and Appellants. | G052016 <br><br> (Super. Ct. No. 30-2014-00739428) <br><br> O P I N I O N |

         Appeal from an order of the Superior Court of Orange County, Jacqueline A. Connor, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

         Reed Smith, Margaret M. Grignon, Anne M. Grignon, Michael Gerst, Ilana R. Herscovitz, James L. Sanders and Stuart A. Shanus; Genga & Associates, John M. Genga and Khurram A. Nizami for Defendants and Appellants.

         Handal & Associates, Anton N. Handal, Gabriel G. Hedrick and Lauren G. Kane; Newmeyer & Dillion and Thomas F. Newmeyer for Plaintiffs and Respondents.

         \*           \*           \*

\*        Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of subparts B., and C. of part II.

Characterized by the trial court as litigation in which "[m]oney does not appear to be an object to the parties and counsel[,]" this case calls on us to consider the propriety of a discovery referee's order imposing $100,000 in discovery sanctions against defendants Alieu B. M. Conteh (Conteh), Odessa Capital Inc., Dominique Financial, Ltd., OOA ONE, LLC, and OOA TWO, LLC (collectively, defendants), for failure to comply with a prior discovery order. Defendants contend the referee, stipulated to by the parties to rule on all discovery related matters, erred in imposing monetary sanctions due to both procedural and substantive defects. Among other things, they assert that defendants' "substantial compliance" with the prior discovery order, combined with Conteh's expressed willingness to sit for an additional deposition and produce additional documents, precluded the levying of any sanctions. They also claim the amount of sanctions is unjustified.

In the published portion of this opinion, we conclude that the referee's order, filed with the trial court, is appealable. The language of the reference, expressly made under Code of Civil Procedure section 638, subdivision (a),[1] and the actions of the parties, the referee and the court, indicate that the reference was a general reference, making the referee's order appealable once filed with the court.

In the unpublished portion, we address the merits of Defendants' appeal and reject their challenges to the imposition and amount of monetary sanctions. Defendants conceded below that they failed to comply with the prior discovery order, and the referee did not abuse her discretion under the circumstances either in determining monetary sanctions were appropriate despite Conteh's promises about his future actions, or in calculating the amount of appropriate sanctions.

---

[1] All further statutory references are to the Code of Civil Procedure unless specified otherwise.

2

# I

## FACTS AND PROCEDURAL BACKGROUND

African Wireless, Inc. (African Wireless) is a Delaware corporation owned by a handful of shareholders. Conteh and his closely held business entity, Dominique Financial, Ltd., own approximately 70 percent of African Wireless shares. In addition to being a shareholder, Conteh is African Wireless' CEO and Chairman of its Board of Directors. He has the power to nominate three of the five members of the African Wireless Board. Plaintiffs James R. Lindsey, as trustee of the Lindsey Family Trust, William Buck Johns, Wymont Services, Ltd. and Marc van Antro (collectively, the minority shareholders) each hold between a one and 15 percent interest in African Wireless, and all but one acts as, or has a representative who acts as, a director of African Wireless.

African Wireless' principal place of business is designated as the City of Irvine, but the corporation has no operations, no sales and no employees. Its purpose is to act as a holding company, with its principal asset being a 60 percent interest in Congolese Wireless Network SPRL (Congolese Wireless). Congolese Wireless is a business entity organized under the laws of the Democratic Republic of Congo (the DRC). Its principal place of business is in Kinshasa, DRC, and all of its operations take place in the DRC. Beginning in 1990, Conteh served as manager of Congolese Wireless. With assistance from Conteh and a few politically connected and powerful citizens in the DRC, Congolese Wireless embarked on a joint venture with another company, Vodacom International Ltd. They created a new entity known as Vodacom Congo for the purpose of owning and operating a wireless telephone network in the DRC.

In late 2012, a Congolese criminal tribunal allegedly convicted Conteh of forgery, sentencing him to one year in jail. A warrant was supposedly issued for his immediate arrest following the rejection of all appeals in the case. Conteh chose to flee the country to avoid incarceration. Less than two years later, a Congolese commercial

tribunal allegedly ruled against Conteh in a business lawsuit due to Conteh's criminal forgery conviction. That alleged ruling prohibited Conteh from: (1) performing any acts in the name of, and on behalf of, Congolese Wireless, and (2) representing Congolese Wireless within any of the management and administrative bodies of Vodacom Congo.

In August 2014, the minority shareholders filed this shareholder derivative action on behalf of African Wireless and against Conteh, as an individual, and various of his alleged investment entities that purportedly have ties to Congolese Wireless and African Wireless. The operative complaint alleges that over the course of nearly a decade, Conteh took various actions and engaged in transactions that were detrimental to African Wireless' interests and that usurped opportunities belonging to it. The causes of action include breach of fiduciary duty, unjust enrichment, accounting and conversion, and among the relief sought is monetary damages, prejudgment interest, injunctive relief, declaratory relief and a constructive trust.

The minority shareholders sought a temporary restraining order (TRO) and a preliminary injunction to remove Conteh from his African Wireless director position and prohibit him from voting his shares in the corporation. The trial court denied the TRO request, but scheduled a preliminary injunction hearing. In preparation for the hearing, the parties initiated expedited discovery by way of interrogatories, deposition notices, and requests for admissions and production of documents. At this point, whatever was not already sour between the parties quickly turned such. The minority shareholders accused Conteh, as an individual and as the representative of the business entity defendants, of failing to produce a single document, refusing to confirm a deposition date and appear for a deposition, and unreasonably objecting to all discovery. In turn, defendants accused all or some of the minority shareholders of refusing to produce for deposition a party-affiliated witness, Jonathan Sandler (Sandler), producing a "shell" person most knowledgeable (PMK) for deposition, and failing to respond to interrogatories and document production requests.

4

After a variety of back and forth between the parties' counsel, the parties remained unable to agree on deposition schedules and locations, and each believed the other was continuing to fail to provide meaningful discovery responses. At the preliminary injunction hearing, the trial court briefly addressed discovery matters raised in the parties' preliminary injunction papers, expressing "disappointment in the utter inability of counsel to effectively meet and confer." Believing a discovery referee to be necessary, the court directed counsel to meet and confer to select one, but left the parties to work out the details.

Thereafter, the parties agreed upon a discovery referee and related details. They stipulated that the referee would have broad powers, including "the authority to set the date, time, and place for any hearings determined by the discovery referee to be necessary, to preside over hearings, to take evidence if the referee so determines, rule on discovery objections, discovery motions, and other requests made during the course of the hearing." The reference order drafted by the parties, and issued by the trial court, indicated it was made pursuant to section 638, subdivision (a), and ordered that the parties' then pending discovery motions were to be heard and decided by the referee.

In January 2015, following a telephonic hearing and a review of the more than 1,000 pages submitted in conjunction with the then pending motions to compel, the discovery referee issued a 38-page detailed ruling and order. The referee ordered Conteh to attend a three-day deposition in South Africa on specified dates, and Sandler to attend a deposition in the same location on the two days prior to the start of Conteh's deposition. The parties stipulated that Conteh was the PMK for each of the business entity defendants, so his appearance would be both in his individual capacity and as PMK. As for documents, defendants were ordered to produce the documents listed in the deposition notices for Conteh and the business entity defendants on or before February 23, 2015 – a date 10 days prior to Conteh's scheduled deposition – "at a time, place and manner

5

agreed upon by counsel." Defendants were also ordered to provide certain verifications and privilege logs.

Defendants served their first document production and related responses on the agreed upon date. Two days later, defendants' counsel produced an additional batch of documents without a proof of service.

Both Sandler's and Conteh's depositions took place in South Africa as ordered by the discovery referee, with Conteh's lasting the full three days for which it was scheduled. During the first day of Conteh's deposition, Conteh admitted that he did not produce certain requested documents even though he acknowledged their existence, and that he had not done a diligent search for all responsive documents "in [his] possession and control." He stated that additional documents were likely in his office in South Africa or in the DRC, and that the latter could be sent by his staff in the DRC.

Two days after Conteh's deposition concluded, the minority shareholders sent a motion to the discovery referee requesting that discovery sanctions be levied against Conteh and each of the business entity defendants for their alleged failure to comply with the portion of the referee's January 2015 order concerning document production. They requested terminating, evidentiary, contempt and monetary sanctions. Defendants opposed the sanctions motion.

Following a hearing, and taking into consideration all of the parties' arguments and evidence, the referee issued a detailed ruling, finding that Conteh had violated the January 2015 order in multiple ways. Based on her factual findings, the referee concluded that monetary sanctions were warranted, but other sanctions were not. She found the more than $130,000 requested by the minority shareholders to be excessive, and instead imposed $100,000 in sanctions.

The referee's sanctions order was filed with the trial court on May 20, 2015. Defendants timely appealed, limiting their appeal to the monetary sanctions aspect of the order.

6

## II

## DISCUSSION

*A. Determining the Nature of the Reference*

An appeal of an order to pay monetary sanctions in an amount over $5,000 is an appealable order over which we have jurisdiction. (§ 904.1, subd. (a)(12); *Rail–Transport Employees Assn. v. Union Pacific Motor Freight* (1996) 46 Cal.App.4th 469, 471 (*Rail-Transport*).) Our review of the record raised a concern about whether the discovery referee's ruling from which defendants appeal is a qualifying "order" given that the trial court filed the ruling, but took no further action with respect to it. At our request, the parties provided additional briefing concerning the nature of the reference and the resulting implications on appealability.[2] We conclude, based on the language of the reference and the actions of the parties, the referee and the court, that the reference was a general reference, making the referee's order directly appealable without further action from the court.

The parties agree that if the reference to the referee was a "general" reference, the referee's sanctions ruling stands as one of the trial court and, thus, would be directly appealable. (§§ 644, subd. (a), 645 ["The decision of the referee appointed pursuant to Section 638 . . . may be excepted to and reviewed in like manner as if made by the court"]; *Ellsworth v. Ellsworth* (1954) 42 Cal.2d 719, 722 (*Ellsworth*).) There is also agreement on the converse – if it was a "special" reference, the ruling is not appealable because the court did not take action to independently review and adopt it, in

---

[2] In their supplemental briefing, the minority shareholders request that we take judicial notice of briefs submitted by the parties concerning a motion by the minority shareholders to strike defendants' answers based on a February 2016 ruling of the discovery referee. They also request that we take judicial notice of an April 22, 2016, trial court minute order ruling on that motion. We grant their request, but only as to the existence of the documents, not the truth of their contents. (*Kilroy v. State of California* (2004) 119 Cal.App.4th 140, 145-147 (*Kilroy*); *Columbia Casualty Co. v. Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457, 473 (*Columbia Casualty Co.*).)

whole or in part. (§ 644, subd. (b); *Aetna Life Ins. Co. v. Superior Court* (1986) 182 Cal.App.3d 431, 436 (*Aetna*).) The critical question is whether the reference is properly characterized as "general" or "special."

The Code of Civil Procedure provides for both general and special references. A general reference is an appointment to a referee made pursuant to section 638, subdivision (a), giving the referee authority "[t]o hear and determine *any or all* of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision." (Italics added; see *Fredendall v. Shrader* (1920) 45 Cal.App. 719, 723; *Kajima Engineering & Construction, Inc. v. Pacific Bell* (2002) 103 Cal.App.4th 1397, 1400-1401; *Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1521-1522; *Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197, 1208 (*Ruisi*).) A special reference is an appointment to a referee made pursuant to section 638, subdivision (b), or section 639, giving the referee authority to perform certain specified tasks and report a recommendation back to the trial court for independent consideration and further action by the court. (§ 644, subd. (b); *Ellsworth*, *supra*, 42 Cal.2d at p. 722; *Ruisi*, *supra*, 53 Cal.App.4th at p. 1208; *Dynair Electronics, Inc. v. Video Cable, Inc.* (1976) 55 Cal.App.3d 11, 20.) Although a special reference may be made with or without the consent of the parties, a general reference requires the parties' prior consent so as to avoid an unlawful delegation of judicial power. (§§ 638, 639; *Holt v. Kelly* (1978) 20 Cal.3d 560, 562; *Aetna*, *supra*, 182 Cal.App.3d at pp. 435-436.)

To determine the nature of the reference, we look not only to the language of the order of reference, but also to any recitals in the referee's ruling, the conduct of the parties and the subsequent actions of the trial court. (See *In re Estate of Hart* (1938) 11 Cal.2d 89; *Lewis v. Grunberg* (1928) 205 Cal. 158; *Estate of Bassi* (1965) 234 Cal.App.2d 529, 539 (*Estate of Bassi*).)

Here, the reference order derived from a "stipulation and request" of the parties and was submitted by them to the trial court in proposed form. It expressly states

8

that the referee's appointment is made "pursuant to California Code of Civil Procedure Section 638(a)" and further specifies that the appointment is "as to all discovery matters for purposes of this action." The reference authorizes the referee to, among other things, set any hearings determined by the referee to be necessary, preside over the hearings, and "rule on discovery objections, discovery motions, and other requests made during the course of the hearing." And, within 20 days after the completion of any hearing, the referee is required to "submit a written decision to the parties and to the Court . . . , with findings and decisions thereon, including a decision for allocation of payment and any decision for the imposition of sanctions."

This language, and the explicit mention of section 638, subdivision (a), is indicative of a consensual general reference. The referee was not merely empowered to determine and report facts, and/or make a recommendation, and there is no provision for the trial court's subsequent involvement in rulings made by the referee. (See § 643, subd. (c); compare *Dallman Co. v. Southern Heater Co*. (1968) 262 Cal.App.2d 582, 589-590 [reference order authorizing referee to ascertain facts concerning existence and amount of damages for report back to court was special reference]; *Weavering v. Schneider* (1921) 52 Cal.App. 181, 183 [reference authorizing referee to examine and report information to court so that court could consider the issue was special reference].) Rather, the parties – with the court's approval – gave the referee the power to make "findings and decisions" and "rule on" all discovery matters, including requests for sanctions. (See also *Hihn v. Peck* (1866) 30 Cal. 280, 285 [reference order requiring referee to try the issues and report "'his findings thereon'" was general, not special, reference].)

The general nature of the reference is underscored by the subsequent actions of the parties, the referee and the trial court. After the reference order was issued, the referee accepted further briefing and heard the parties' motions to compel that had originally been filed with the court. In the resulting ruling, which ordered the South Africa depositions of both Conteh and Sandler and the related document production, the

9

referee stated at the outset that she was ordered to serve "pursuant to CCP section 638(a)" and that the parties had "stipulated that [she] was vested with the authority to rule on discovery motions and depositions at the request of a party." Thereafter, the parties acted as if the referee's ruling had binding effect without any further action by the court. And, when the ruling was sent to the court, the court filed it and took no other action. A similar sequence of events occurred with respect to the sanctions motion and ruling from which this appeal stems.

Because we conclude the reference was a general reference, the referee's sanctions ruling, filed with the trial court, "stand[s] as the decision of the court" and we have jurisdiction over the appeal. (§ 644, subd. (a); see §§ 645, 904.1, subd. (a)(12); *Rail–Transport*, *supra*, 46 Cal.App.4th at p. 471.)


## B. *Motion to Dismiss Appeal*

Next, we address the minority shareholders' motion to dismiss the appeal, which was filed after briefing was complete. They assert dismissal is warranted for multiple reasons, each of which lacks merit.

The minority shareholders contend dismissal is proper under the disentitlement doctrine due to what they describe as defendants' "pattern and practice of engaging in willful defiance of trial court orders and improper obstructive tactics." The disentitlement doctrine is an equitable doctrine which recognizes an appellate court's inherent power to dismiss the appeal of a party who has refused to obey legal court orders. (*Blumberg v. Minthorne* (2015) 233 Cal.App.4th 1384, 1391 (*Blumberg*); *MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277.) It prevents a party from seeking assistance from the court while that party is in "'an attitude of contempt to legal orders and processes of the courts.'" (*In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 459.) A formal finding of contempt is not required; "'the same principle applies to wilful [*sic*] disobedience or obstructive tactics without such an adjudication.'" (*Alioto*

10

*Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1683.)  The doctrine has been applied in a wide range of situations, including where the appellant repeatedly refused to comply with discovery orders.  (*Blumberg*, *supra*, 233 Cal.App.4th at p. 1391; see, e.g., *In re Marriage of Hofer*, *supra*, 208 Cal.App.4th 454.)

To support their disentitlement doctrine argument, the minority shareholders cite a February 2016 statement of decision issued by the same discovery referee that granted the sanctions motion at issue in this appeal.  The 29-page decision states that the defendants willfully failed to comply with multiple court orders concerning discovery and concludes with a determination that terminating sanctions were appropriate.

Although we grant the minority shareholders' unopposed motion for us to take judicial notice of the February 2016 decision,[3] we do nothing more than note its existence and the existence of the statements therein.  (*Kilroy, supra*, 119 Cal.App.4th at pp. 145-147.)  Judicial notice of the truth of the content of trial court records generally "is not appropriate either because the truth of the content is reasonably subject to dispute [citation], or because the content is hearsay [citations]."  (*Columbia Casualty Co., supra*, 231 Cal.App.3d at p. 473.)  Such is the case here, where, among other things, the defendants assert that facts relied on by the discovery referee were "materially misrepresented" by the minority shareholders, and an appeal concerning the grant of terminating sanctions and entry of default judgment is currently pending in this court.[4]

---

[3] In conjunction with their motion to dismiss the appeal, the minority shareholders filed a motion for judicial notice, or in the alternative, motion to augment the record, concerning the referee's February 2016 decision, which was filed with the trial court on February 16, 2016.  We grant the unopposed request for judicial notice. (Evid. Code, §§ 452, subd. (d), 459.)

[4] We take judicial notice of the existence of the other appeal on our own motion.  (Evid. Code, §§ 452, subd. (d), 459.)

11

Because the February 2016 ruling is the sole evidence on which the minority shareholders rely to support their argument, there is a lack of evidence demonstrating the acute recalcitrance necessary to justify dismissal pursuant to the disentitlement doctrine.

We likewise reject the minority shareholders' next contention – that dismissal is warranted due to what they characterize as "an irreconcilable conflict of interest" had by the defendants' former counsel. They claim that at the time this appeal was filed, defendants' then counsel concurrently represented African Wireless, a corporation that is a nominal defendant in this case, and Conteh, an individual who is a corporate director of African Wireless and who is accused of, inter alia, fraudulent mismanagement of the corporation. Even if such was the case and such concurrent representation amounted to some type of conflict of interest, matters on which we express no opinion, the minority shareholders provide no legal authority for the proposition that dismissal would be appropriate. (See Cal. Rules of Court, rule 8.54(a)(1) ["[A] party wanting to make a motion in a reviewing court must serve and file a written motion stating the grounds and the relief requested and identifying any documents on which the motion is based"]; *Potrero Neuvo Land Co. v. All Persons Claiming etc.* (1909) 155 Cal. 371, 372 [burden is on party moving to dismiss appeal to show that grounds for dismissal of the appeal exist].)

Lastly, contrary to the minority shareholders' assertions, discovery sanction orders in excess of $5,000 are directly appealable pursuant to section 904.1, subdivision (a)(12). (§ 904.1, subd. (a)(12) ["From an order directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)"]; *Tucker v. Pacific Bell Mobile Services* (2010) 186 Cal.App.4th 1548, 1559; *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148

Cal.App.4th 390, 401 (*Sinaiko*).)  The cases they cite in support of the contrary[5] were superseded on this point by a 1993 legislative amendment to section 904.1.  (*Rail–Transport*, *supra*, 46 Cal.App.4th at pp. 473-475.)

## C.  *Monetary Sanctions*

Turning to the merits of the appeal, defendants argue that the referee unwarrantedly imposed monetary sanctions due to both procedural defects and substantive errors.  We generally review the imposition of a discovery sanction, and the amount imposed, for abuse of discretion.  (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1293 (*Reedy*) ["'The court's discretion to impose discovery sanctions is broad, subject to reversal only for manifest abuse exceeding the bounds of reason'"]; *Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 294.)  We review the referee's factual findings under a substantial evidence standard of review (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1479), and we review de novo certain procedural aspects, such as whether adequate notice of the sanctions motion was provided (see *Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513 [questions of law are reviewed de novo]).

### 1.  *Additional Facts Relevant to Sanctions Award*

To aid in our discussion of defendants' assertions, we provide some additional detail concerning the parties' discovery disputes and the referee's orders.

Prior to a referee being appointed, the minority shareholders noticed Conteh's deposition for a date in early September 2014, with the deposition to take place where Conteh claimed to reside – South Africa.  Conteh, through his counsel, objected to both the date and location of the deposition.  He indicated that Paris, France, where his counsel had an office, would be a more suitable place for the deposition as it would save

---

[5]  The minority shareholders cite *Hanna v. BankAmerica Business Credit, Inc.* (1993) 16 Cal.App.4th 913, and *Ghanooni v. Super Shuttle* (1992) 2 Cal.App.4th 380.

13

considerable travel time and expense for both parties.  The minority shareholders'
counsel rejected such a location, stating that they had "already undertaken great expense
to accommodate the taking of [Conteh's] deposition near his home [in South Africa]."
Following contentious e-mail exchanges between the parties' respective counsels,
Conteh's counsel indicated agreement to South Africa as the location, but proposed a date
that fell not long before the date scheduled for the preliminary injunction hearing.  The
minority shareholders' counsel insisted on the originally noticed deposition date, a date
on which Conteh had previously indicated he was not available.  Additional back and
forth between the parties' counsel ensued, with South Africa, Paris and London each
mentioned as a potential location for Conteh's deposition, but no agreement was reached.

After the trial court appointed the referee pursuant to the parties'
stipulation, the referee considered the then pending motions to compel, which were
primarily focused on mandating the appearance of Conteh and Sandler at depositions and
requiring the production of documents requested in prior deposition notices.  In the
resulting 38-page January 2015 order, the referee detailed at length and with great
specificity what each party was being ordered to do.  Because the parties had both
expressed concern that the other would not ultimately produce its respective deponent,
the referee cautioned that if either Sandler or Conteh did not appear for his deposition,
there would be "serious and appropriate sanctions[,]" which the parties agreed "would at
a minimum include the striking of their pleadings."

Defendants' first production of documents, consisting of just under 4,500
pages, was served via e-mail and overnight mail and accompanied by verifications and a
proof of service.  Their second production of documents, consisting of approximately
4,000 pages, lacked a proof of service and was delivered via an e-mail which contained
an electronic link to a File Transfer Protocol (FTP) site from which copies could be
downloaded.

14

In the minority shareholders' motion for sanctions that followed Conteh's South Africa deposition, they alleged that Conteh made "little to no effort" to collect responsive documents and that defendants failed to produce the requested "bank statements, source financial documentation, emails, and minutes of corporate meetings and correspondence." Although they requested that defendants be ordered "to pay the expenses incurred by the Plaintiffs in connection with their travel to Johannesburg, South Africa to take the depositions in the amount to be determined per the declaration of Counsel[,]" they did not specify an amount.

Defendants opposed the sanctions motion on multiple grounds. First, they argued that Conteh, as an individual and on behalf of the entities, had obeyed the referee's order in good faith by producing two batches of responsive documents, which they claimed "included financial documents, emails, corporate meeting minutes, and correspondence." Second, they argued that Conteh could not produce the Congolese Wireless documents desired by the minority shareholders because they were "not within his 'possession, custody, or control.'" Third, they asserted sanctions were unnecessary because Conteh had already offered to appear in Los Angeles for a second deposition and produce additional documents at that time. Fourth, defendants argued they should not have to pay the minority shareholders' travel expenses for Conteh's South Africa deposition because the minority shareholders' counsel would have travelled there anyway for Sandler's deposition, and the minority shareholders had unreasonably rejected defendants' offers to have Conteh's deposition take place in a location that would have reduced costs (e.g., California, Paris, London).

In reply, the minority shareholders admitted to receiving both sets of documents from defendants, but emphasized that (1) the second set was provided two days after the deadline specified by the referee's order; (2) the second set failed to include a proof of service, which they argued meant it was not a valid production; (3) all responsive documents had not been produced, including certain financial records;

15

(4) Conteh was not truthful about having diligently searched for responsive documents; and (5) Conteh's offer to sit for an additional deposition and produce additional documents was insufficient to avoid the imposition of sanctions for his past conduct. The minority shareholders reiterated their request to be reimbursed for certain fees and costs, this time including not only the full cost of the South Africa deposition (i.e., airfare, hotel, court reporter costs and attorney time), but also attorney fees related to the sanctions motion. No specific dollar amounts were listed; they indicated that proper sworn declarations and proof of expenditures would be submitted if the referee were to grant their request.

Less than 24 hours before the telephonic hearing concerning the sanctions, and in response to a tentative ruling provided by the referee, the minority shareholders' counsel submitted a supplemental declaration. An attachment to the declaration listed the costs and fees allegedly incurred by the minority shareholders in connection with Conteh's South Africa deposition and attorney fees related to the sanctions motion – $83,649 for the former and $46,155 for the latter, for a total of $129,804.

Because the discovery referee's tentative ruling was to deny the requests for nonmonetary sanctions and the minority shareholders' counsel submitted on that tentative, defendants' counsel focused his arguments during the hearing on the issue of monetary sanctions. In addition to opposing any award on a variety of both procedural and substantive grounds, defendants' counsel objected to the 11th hour costs and fees declaration. The referee took the matter under submission.

The ensuing 15-page detailed ruling by the referee found that Conteh appeared for the ordered deposition in South Africa, produced responsive documents on February 23, 2015, and on February 25,2015, "made a belated supplemental production of documents, together with a privilege log, but failed to attach the requisite proof of service for the documents and never produced hard copies." The referee also found that "Conteh signed an Affidavit under oath attesting to a diligent search for the documents

16

responsive to the Deposition Notice, but conceded during his deposition that he neither performed a diligent search nor produced all responsive documents under his control."

It was based on these factual findings that the referee concluded monetary sanctions were warranted. The $100,000 amount she deemed reasonable included: (1) half the costs of Conteh's South Africa deposition (airfare, hotel and court reporter), (2) attorney's fees for "a portion of the attorney time spent on [the] deposition[,]" and (3) "a portion of [the] attorneys' fees and costs" related to the sanctions motion. Although defense counsel did not request an opportunity to respond to the minority shareholders' costs and fees declaration, the referee authorized defendants to file a written opposition within seven days to address the amount of monetary sanctions. If they did so, the referee would "reconsider the entire amount of the sanction."

In addition to imposing monetary sanctions, the referee ordered Conteh to take certain actions. First, he was reordered to produce the documents he was supposed to produce under the January 2015 order, and to execute a sworn affidavit that he diligently searched for and produced all responsive documents, except for attorney-client privileged documents which were to be included in a privilege log. To resolve a dispute over certain categories of documents, the order mandated that three specified categories of documents be part of the forthcoming production. Second, the referee ordered Conteh to provide the minority shareholders' counsel with a thumb drive of electronic copies of the documents produced on February 25, 2015, along with a properly executed proof of serviced. Third, consistent with his voluntary offer, Conteh was ordered to appear for an additional deposition in Los Angeles. The defendants filed a timely written opposition, along with declarations and exhibits. However, instead of limiting their arguments to the amounts specified in opposing counsel's declaration, their opposition largely rehashed their belief as to why monetary sanctions were not warranted in the first instance – arguments already considered and rejected by the referee.

17

### 2. *Imposition of Sanctions*

Defendants contend that the imposition of monetary sanctions in any amount was error because (1) statutory procedural requirements were not followed; (2) sanctions were unnecessary given that Conteh agreed to an additional deposition in Los Angeles and to produce additional documents; (3) Conteh could not be legally obligated to produce some of the documents at issue because they were not under his "control"; and (4) Conteh substantially complied with the January 2015 order. We reject each of these contentions.

Defendants first argue that the minority shareholders failed to meet and confer prior to requesting sanctions. But, there is no "meet and confer" requirement for a sanctions request based on misuse of discovery or based on a party's violation of an order concerning production of documents. (§§ 2023.040, 2025.480, subd. (k); *Sinaiko*, *supra*, 148 Cal.App4th at p. 411.) Defendants improperly conflate the requirements for a motion to compel attendance at a deposition and/or a related production of documents (§§ 2025.450, subd. (b), 2025.480, subd. (b)) with those applicable to a sanctions motion for noncompliance with a trial court's discovery order. It was the latter, not the former that was the basis of the minority shareholders' sanctions request.

Their next argument, that the referee lacked authority to award sanctions pursuant to sections 2025.450 and 2025.480 because the minority shareholders only requested relief under section 2023.030, is likewise without merit. To begin, defendants provide no authority for the proposition that citation to a particular statutory section in the notice of motion or motion is a mandatory prerequisite to a discovery sanction award. Further, even if such a requirement existed, and even if we assumed defendants preserved the issue by raising it below, which they did not, their assertion ignores the interplay of the discovery statutes.

18

Section 2023.030 authorizes a trial court to impose sanctions for conduct that amounts to a "misuse of the discovery process[,]"[6] but it is not self-executing. The types of sanctions available for a particular misuse are a function of authorizations set forth in the statute(s) applicable to each discovery method or any another discovery statute. (§ 2023.030 ["To the extent authorized by the chapter governing any particular discovery method or any other provision of this title . . . ."].) For example, section 2025.450, subdivision (h), provides, "if [a] party or party-affiliated deponent . . . fails to obey an order compelling attendance, testimony, and production, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction . . . ." It further authorizes the court to impose a monetary sanction either in lieu of, or in addition to, the other sanctions mentioned. (*Ibid.*) Section 2025.480, subdivision (k), makes a nearly identical authorization for situations in which a deponent fails to obey an order requiring him or her to produce documents and/or answer certain questions. Here, the minority shareholders' request clearly indicated they were seeking sanctions for the defendants' "failure to comply with [the] [o]rder for [d]iscovery of January 23, 2015" by not producing the documents they were ordered to produce, and the referee awarded sanctions under the statutes relevant to such a failure.

Defendants' final procedural challenge is that sanctions were not warranted because the minority shareholders failed "to provide notice of any monetary sanctions amount in the notice of motion and support such a request with an attorney declaration." Although there is some merit to the defendants' assertions, they fail to show prejudice,

---

[6] A separate statute sets forth a nonexhaustive list of actions and inactions that constitute misuse of the discovery process, including "[m]aking an evasive response to discovery" and "[d]isobeying a court order to provide discovery." (§ 2023.010, subds. (f) & (g).)

19

which is a prerequisite for reversal. (Cal. Const., art. VI, § 13; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801-802.)

Section 2023.040 states that the notice of motion for a sanctions request "shall . . . identify every person, party, and attorney against whom the sanction is sought, and specify the type of sanction sought." It further states that the request "shall be supported by a memorandum of points and authorities, and accompanied by a declaration setting forth facts supporting the amount of any monetary sanction sought." (*Ibid.*)

It is undisputed that no dollar value was included in the minority shareholders' initial sanctions request and that the minority shareholders' attorney did not submit a declaration detailing fees and costs sought to be recovered through a sanctions award until the afternoon before the hearing. However, the minority shareholders' letter to the referee requesting sanctions made clear what was being sought and why: the subject line specified that it was a "[m]otion for [s]anctions and other appropriate relief for failure to comply with [o]rder for [d]iscovery of January 23, 2015[;]" the first sentence of the letter expressly stated that defendants' failure to comply concerned the production of documents; the particular aspects of the order allegedly violated were identified; excerpts from Conteh's South Africa deposition that allegedly evidenced the noncompliance were provided; the law concerning various types of sanctions was explained; and the sanctions being sought were listed, which included expenses related to Conteh's South Africa deposition.

Additionally, the referee recognized that defendants did not have the chance to respond to the belated declaration of the minority shareholders' counsel's prior to the hearing, and remedied the issue. Although the referee's initial ruling found that $100,000 was an appropriate amount, the referee expressly gave defendants the opportunity to contest that amount, in toto, with a supplemental written opposition. Defendants seized the opportunity, filing with the referee a supplemental opposition, two supplemental declarations and a variety of exhibits. Following a reply by the minority shareholders,

20

and taking into account all arguments made by the parties concerning the amount of monetary sanctions, the discovery referee confirmed the $100,000 sanctions order.

Having had a full opportunity to be heard, defendants may not complain about the specific amount of monetary sanctions not being initially provided; there was no prejudice. (*Reedy*, *supra*, 148 Cal.App.4th at p. 1288 ["'[I]t is well settled that the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of the motion'"]; *London v. Dri-Honing Corp.* (2004) 117 Cal.App.4th 999, 1008 ["[A] party is obligated to comply with the discovery statutes cooperatively and in good faith, regardless of what sanctions it may or may not be subject to. The suggestion that a party's cooperation during discovery depends on how heavy the hammer is that hangs above its head is troublesome"]; *Lever v. Garoogian* (1974) 41 Cal.App.3d 37, 40 ["Procedural defects which do not affect the substantial rights of the parties do not constitute reversible error"].)

Turning to defendants' substantive attacks on the grant of sanctions, they contend Conteh's offer to sit for an additional deposition session in Los Angeles, at which time he would produce additional responsive documents, precluded the imposition of sanctions. Referring to this as a "voluntary self-sanction," defendants state that it "would more than compensate Plaintiffs for any alleged harm they incurred from Conteh's failure to produce documents." The minority shareholders disagree, arguing that Conteh's after-the-fact offer to comply with the January 2015 order does not absolve him, as an individual and as a representative of the entity defendants, of his past noncompliance and the resulting "tens of thousands of dollars" that the minority shareholders' claim "were wasted pursuing a meaningless exercise" – the South Africa deposition.

Discovery sanctions must be "suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks," and not punishment.

21

(*Caryl Richards, Inc. v. Superior Court of Los Angeles County* (1961) 188 Cal.App.2d 300, 304 (*Caryl Richards, Inc.*).)  That said, the trial court has broad discretion to determine, based on its factual findings, whether sanctions are warranted in a given instance, as well as the suitable type.  (*Reedy*, *supra*, 148 Cal.App.4th at p. 1293.)  Although a different referee or trial court may have been more sympathetic to defendants and, for example, given them another warning before imposing sanctions, the discovery referee's decision to impose monetary sanctions under the circumstances did not exceed the bounds of reason.  (*Ibid.*; *Evilsizor v. Sweeney* (2014) 230 Cal.App.4th 1304, 1313 [affirming sanctions order because trial court ruling was reasonable exercise of discretion].)

The referee's finding that defendants failed to produce the responsive documents they were previously ordered to produce was based on Conteh's own deposition statements indicating "that he neither performed a diligent search nor produced all responsive documents under his control."  Defendants do not contest, and in fact have admitted to, the inadequate production and failure to diligently search for responsive documents.  What they characterize as "substantial[] compli[ance]" with the January 2015 order does not absolve the noncompliance.

Further, although Conteh "promised" to appear in Los Angeles for additional deposition sessions and to produce additional documents responsive to the minority shareholders' original requests, the discovery referee was not required to take him at his word.  We are reminded of the common adage that "actions speak louder than words."  Conteh's track record showed that (1) he failed to produce documents from the outset, which led to the minority shareholders filing a motion to compel; (2) he failed to comply with the document production aspect of the order that resulted from the referee's grant of that motion to compel; (3) he did not engage in the diligent search for documents that he swore under oath he had performed; (4) he failed to produce responsive documents that he admitted existed and to which he had access; and (5) he continued to

22

fail to produce those additional documents even after stating at his South Africa deposition that he would do so in the next day or so. Given this pattern, it was within reason for the discovery referee to believe monetary sanctions were necessary to get defendants to produce the documents, to curb further delays and to make it clear that further discovery gamesmanship preventing another party from obtaining discovery to which they are entitled would not be tolerated. (*Sauer v. Superior Court* (1987) 195 Cal.App.3d 213, 230 (*Sauer*) ["'Belated compliance with discovery orders does not preclude the imposition of sanctions'"]; *Caryl Richards, Inc.*, *supra*, 188 Cal.App.2d at p. 303 ["One of the principal purposes of the Discovery Act . . . is to enable a party to obtain evidence in the control of his adversary in order to further the efficient, economical disposition of cases according to right and justice *on the merits*"].)

The two cases cited by defendants are inapposite. At issue in both were nonmonetary sanctions, which are viewed as more harsh than monetary ones. (*McGinty v. Superior Court* (1994) 26 Cal.App.4th 204, 210 (*McGinty*); *Motown Record Corp. v. Superior Court* (1984) 155 Cal.App.3d 482, 488 (*Motown*).) Further, unlike in *McGinty*, *supra*, 26 Cal.App.4th at pages 213-214, the referee in this case was not dealing with an inadvertent violation of a court order that resulted in minimal, if any, prejudice to the other side. And, unlike in *Motown*, *supra*, 155 Cal.App.3d at pages 487-488, the referee in this case was not dealing with a situation where documents were produced only a few days late, and the referee did not order documents to be produced irrespective of any claimed privilege.

We also find no validity in defendants' last argument concerning the imposition of sanctions – that a dispute concerning their obligation to provide documents belonging to Congolese Wireless barred any monetary sanctions. Defendants overlook that the unproduced documents at issue were not limited to Congolese Wireless documents, but rather extended, for example, to bank and financial records of the multiple business entity defendants. Moreover, Conteh indisputably did not diligently

23

search for responsive documents. This, alone, was a violation of the January 2015 order, irrespective of whether such a search would have resulted in the production of additional documents.

### 3. Amount of Sanctions

Defendants also challenge the amount of sanctions imposed, asserting that (1) the minority shareholders failed to show a causal nexus between the alleged order violations and the monetary sanctions requested, (2) there was no evidence that the attorney fees claimed were actually incurred by the minority shareholders, and (3) the amount – including items, hours and rates claimed – is excessive. We find no merit in their contentions.

Monetary sanctions imposed due to a misuse of the discovery process may be in an amount equal to "the reasonable expenses, including attorney's fees, incurred by anyone as a result of [the misuse]." (§ 2023.030, subd. (a).) As with discovery sanctions in general, monetary sanctions should not serve as punishment. (*Do v. Superior Court* (2003) 109 Cal.App.4th 1210, 1213.) Additionally, they should not put the requesting party in a better position than it would have been had the discovery abuse had not occurred; the aim is to make the requesting party whole again. (*Sauer*, *supra*, 195 Cal.App.3d at p. 228.)

Here, the minority shareholders' counsel declared that the amount being requested consisted of "costs and fees *incurred by the Plaintiffs* in connection with the deposition of Defendant Alieu B. M. Conteh[,]" and expressly excluded any amounts attributable to Sandler's deposition. (Italics added.) The declaration separately itemized airfare, hotel and court reporter expenses for Conteh's South Africa deposition, specified the hourly rates of each attorney and a paralegal "for this matter[,]" detailed the work performed by the attorneys and the paralegal, and broke down by day the number of hours spent by each. Although defendants argued that the claimed hourly rates were unjustified and that the attorney hours spent were unreasonable, they produced no counter

24

declaration supporting their argument. (See *Ghanooni v. Super Shuttle* (1993) 20 Cal.App.4th 256, 262.)

Relying on the uncontradicted statements of the minority shareholders' counsel made under penalty of perjury, and her intimate knowledge of the parties and the history of their discovery disputes, the referee calculated an amount of sanctions that she believed was a reasonable under the circumstances. She did not merely "rubber stamp" the amount requested. Rather, included in the $100,000 amount were: (1) *a portion of* the attorney time spent on Conteh's South Africa deposition; (2) *one-half* the costs of the airfare, hotel and court reporter related to the deposition; and (3) *a portion of* the attorney fees and costs related to the sanctions motion. Contrary to defendants' assertions, this amount does not provide a windfall to the minority shareholders. It reasonably compensates them for expenses incurred as a result of defendants' admitted failure to comply with the January 2015 discovery order.

"'A court's decision to impose a particular sanction is "subject to reversal only for manifest abuse exceeding the bounds of reason."'" (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 880.) The referee's decision to sanction defendants in the amount of $100,000 did not exceed those bounds. (*Ibid*. [upholding imposition of $165,000 in monetary sanctions for failure to comply with discovery order].)

III

DISPOSITION

We affirm the order.  Respondents are entitled to their costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.