**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BAGDASARIAN PRODUCTIONS, LLC, a
California limited liability
company, and JANICE KARMAN, an
individual,

Plaintiffs-Appellants,

v.

TWENTIETH CENTURY FOX FILM
CORPORATION, a Delaware
corporation,

Defendant-Appellee.

No. 10-56430

D.C. No.
2:10-cv-02991-
JHN-JCG

OPINION

Appeal from the United States District Court
for the Central District of California
Jacqueline H. Nguyen, District Judge, Presiding

Argued and Submitted
February 13, 2012—Pasadena, California

Filed March 26, 2012

Before: Harry Pregerson, Michael Daly Hawkins, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Hawkins

**COUNSEL**

Gerard E. Harper, Paul, Weiss, Rifkind, Wharton & Garrison, New York, New York, for the plaintiffs-appellants.

Louis A. Karasik, Alston & Bird, Los Angeles, California, for the defendant-appellee.

## OPINION

HAWKINS, Senior Circuit Judge:

In an issue of first impression, we consider whether an order compelling enforcement of a contractual agreement to submit a dispute to a referee, and staying proceedings in the interim, is immediately appealable. The dispute stems from a written agreement between Plaintiffs Bagdasarian Productions, LLC and Janice Karman (collectively, "Plaintiffs") and Defendant Twentieth Century Fox Film Corporation ("Fox"), regarding the popular "Alvin and the Chipmunks" movies. The parties' Purchase/Producer Agreement–Literary Material (the "Agreement") granted Fox various rights to develop and produce movies based on the Alvin properties and engaged Plaintiffs to render services in connection with the pictures on a "work for hire" basis. The Agreement also contained a forum selection/choice of law provision that any dispute would be brought in California state or federal court and governed by California law. The Agreement further provided that any dispute arising out of the Agreement would be submitted to a general non-jury reference pursuant to California Code of Civil Procedure § 638.[1]

When a dispute arose regarding certain services Karman

---

[1] Section 638 provides:

A referee may be appointed upon the agreement of the parties filed with the clerk, or judge, or entered in the minutes, or upon the motion of a party to a written contract or lease that provides that any controversy arising therefrom shall be heard by a referee if the court finds a reference agreement exists between the parties:

(a) To hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision.

(b) To ascertain a fact necessary to enable the court to determine an action or proceeding.

provided in connection with *Alvin and the Chipmunks, The Squeakquel* ("*The Squeakquel*"), Plaintiffs filed this action. Fox moved to stay the case and to refer the dispute to a referee as the Agreement provided. The district court granted the motion, whereupon Plaintiffs brought this interlocutory appeal to contest the reference. Because we conclude we lack jurisdiction at this stage of the proceedings, we dismiss the appeal.

## FACTS AND PROCEDURAL HISTORY

In March 2004, Plaintiffs and Fox entered into the Agreement, which granted Fox rights to use pre-existing and future-created Alvin materials owned or controlled by Plaintiffs. The Agreement defines the "Property" covered by the Agreement as:

> That certain pre-existing property generally known as "Alvin and the Chipmunks" a.k.a. "Chipmunks" a.k.a. "Chipmunks Go to the Movies," "Alvin and the Chipmunks Series," "The Alvin Show," including various television series produced commencing in 1961, 1983 through 1987, and 1988 through 1991, created and/or controlled by Ross-Bagdasarian, Sr., Ross Bagdasarian, Jr., Janice Karman, Bagdasarian Productions, LLC, and any and all associated characters (including Simon, Theodore, Alvin and David Seville) now or hereafter created and to the extent owned and/or controlled by Owner, and any and all other plots, themes, titles, story lines, names related thereto, and any and all other elements relating to any of the foregoing, now existing or created hereafter.

The Agreement then grants Fox the following rights in the Property:

> the right to develop, produce, distribute, exhibit, exploit, advertise, promote and publicize, throughout

the universe, in and by any and all manner, media, devices, processes and technology now known or hereafter devised, exclusively and in perpetuity, Theatrical Motion Pictures and Home Video Motion Pictures based on the Property, Merchandising Rights and Commercial Tie-in Rights as set forth in Paragraphs 9(a),(b)(c), and (d), and the motion picture and analogous and allied rights related thereto (collectively, "Motion Picture and Allied Rights") in and to the Property . . . .

In the same paragraph, Plaintiffs agree to

furnish Fox the services of Ross Bagdasarian . . . and Janice Karman . . . (collectively, "Artist"), as producers in connection with the development and possible production of the theatrical motion picture project(s) currently entitled "ALVIN AND THE CHIPMUNKS." Owner shall cause Artist to render all services . . . customarily rendered by producers in the motion picture industry, including supervision of the screenplay materials required by Fox.

The Agreement also incorporated by reference the Standard Terms and Conditions for Purchase of Literary Material ("ST&C"), which provided, among other things, that the "results and proceeds of Artist's services hereunder . . . are being specially ordered by Fox for use as part of a motion picture and shall be considered a 'work made for hire' by Fox and, therefore, Fox shall be the author and copyright owner thereof for all purposes throughout the universe." The ST&C also define "Literary Material" as "written matter, whether published or unpublished, in any form, including a novel, treatment, outline, screenplay, teleplay, story, manuscript, play or otherwise, which may be included in or upon which a Motion Picture may be based."

Released in 2007, the first film enjoyed great financial success. Fox then began work on a second film, *The Squeakquel*.

According to the complaint, Fox contacted Plaintiffs and indicated it was searching for a story for *The Squeakquel*. Karman prepared a thirty-three-page treatment which she pitched to Fox in March 2008. Fox adopted this as a working draft and Karman worked with Fox screenwriters on the treatment over the next several months.

Disappointed with its own writer's first draft of a screenplay, in October 2008 Fox asked Karman to re-write the screenplay. Fox allegedly offered Karman additional compensation beyond that payable under the Agreement, but Karman rejected the offers as insufficient and the parties never reached an agreement. Nonetheless, the complaint alleges Karman delivered a new screenplay to Fox and worked with Fox writers to revise the working draft. Completed in April 2009, the final version contained many scenes, dialogue, and other expressions contributed by Karman.

Plaintiffs then filed suit alleging: (1) Karman was a co-owner of *The Squeakquel* screenplay and entitled to an accounting of profits; (2) alternatively, Fox had infringed her copyright in the screenplay; (3) Fox was unjustly enriched by exploitation of Karman's screenwriting and graphic design services; and (4) Fox breached various contractual obligations to Plaintiffs under the Agreement, pertaining to merchandising rights, compensation for the sequel, approval rights and access to meetings.

In response, Fox moved to refer all these disputes pursuant to California Code of Civil Procedure § 638 and to stay this action. Fox's motion was based on a provision in the ST&C, which provided:

> Any claim or dispute arising out of this Agreement shall be submitted to a general, non-jury reference ("Referee") to hear and decide all matters relating to the claim or dispute pursuant to California Code of Civil Procedure Sec. 638.

Determining that all of Plaintiffs' claims arose out of the Agreement or required interpretation of it, the district court granted the motion to refer, staying proceedings in the meantime.

## DISCUSSION

### I.  Finality of Order

**[1]** We must independently ascertain whether we have jurisdiction to entertain an appeal. *See Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093 (9th Cir. 2004). We have jurisdiction to hear appeals from all "final decisions" of the district courts. 28 U.S.C. § 1291. "So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

**[2]** There is no traditional "final decision" or judgment here. Instead, the court entered a stay pending the Section 638 reference. "[A] stay is not ordinarily a final decision for purposes of § 1291 . . . ." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.11 (1983). However, courts will in limited circumstances permit immediate appeal if the stay order effectively puts the plaintiff "out of court"— creating a substantial possibility there will be no further proceedings in the federal forum, because a parallel proceeding might either moot the action or become *res judicata* on the operative question. *See id.* (noting this usually occurs with cases under "*Colorado River*[2], abstention, or a closely similar doctrine"); *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1102-03 (9th Cir. 2005) (stay appealable where bankruptcy court proceeding might moot action); *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 911-13 (9th Cir.

---

[2]*Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976).

1983) (stay appealable where court stayed action under *Colorado River* doctrine).

**[3]** But here, Plaintiffs fail to explain how the reference puts them "out of court." The principal cases on which Plaintiffs rely to support this claim involve *parallel* proceedings. That is not the case here. There is no ongoing, separate court proceeding; rather, it is this *very same* proceeding which has been referred, not to state court, but to a non-jury proceeding before a referee. A decision by the referee cannot possibly moot this action or be *res judicata*; rather, it will supply a "statement of decision" under § 638(a), the basis for the currently nonexistent final judgment.

**[4]** Plaintiffs nonetheless argue they have been effectively put out of court because there will be "no further merits review by the district court." Although they are correct that with consensual references under Section 638, "the decision of the referee . . . must stand as the decision of the court, and . . . judgment may be entered thereon in the same manner as if the action had been tried by the court," Cal. Code Civ. P. § 644, the California reference statutes also state that the decision of any such referee "may be excepted to and reviewed in like manner as if made by the court." *Id.* § 645.

**[5]** The reference is thus not the effective end of these proceedings, because the case may be reviewed by the district court upon a motion for new trial or other post-judgment motions. *See, e.g.*, *Kajima Engineering & Constr., Inc. v. Pac. Bell*, 103 Cal. App. 4th 1397, 1401 (2002) ("[G]eneral reference 'preserve[s] the court's power regarding new trial motions and other postjudgment remedies.' ") (*quoting Nat'l Union Fire Ins. Co. v. Nationwide Ins. Co.*, 69 Cal. App. 4th 709, 716 (1999)); *Estate of Bassi*, 234 Cal. App. 2d 529, 540 (1965) ("[I]n any event the court had power to review the matter on motion for new trial even if it were a general reference."); *see also Ellsworth v. Ellsworth*, 42 Cal. 2d 719, 722-23 (1954) (referee's decision may be attacked through a

motion for new trial in referring court); *Calderwood v. Pyser*, 31 Cal. 333, 337 (1866) (it is within referring court's power to set aside a referee's erroneous conclusions of law and to direct a proper judgment on the facts found).

Plaintiffs suggest in a footnote that a motion for new trial is properly made before the Section 638 referee rather than the referring court, citing *Clark v. Rancho Santa Fe Ass'n*, 216 Cal. App. 3d 606, 623-25 (1989). However, in *Clark,* the parties had expressly stipulated that the referee's decision would be a "complete and final adjudication" of the matter. *Id.* at 623. Here, the Agreement makes no mention of the finality of the referee's decision. Furthermore, even *Clark* acknowledged that, under *Calderwood,* the referring court would still have the authority to set the judgment aside and correct errors of law. *Id.* at 625.

**[6]** Also unavailing is the Plaintiffs' claim that the district court contemplated no further proceedings. Although the court's order quoted the California Code provision that the referee's judgment must stand as the decision of the court, it also quoted the provision that such decision may be "excepted to and reviewed" as would any other court decision. Cal. Code Civ. P. § 645. That the district court stayed the proceeding rather than dismissing it tells us it expects further involvement. In any event, as discussed further below, appeal of the merits would also eventually lie in this court upon entry of a final judgment in district court. Accordingly, because Plaintiffs fail to explain how the reference puts them effectively "out of court," we decline to treat the order as sufficiently final to permit immediate appeal under 28 U.S.C. § 1291.

## II. Collateral Order Doctrine

**[7]** Alternatively, Plaintiffs argue that the district court order should be immediately appealable under the collateral order doctrine. This doctrine allows for appeal of "a small class of interlocutory orders" that do not terminate the litiga-

tion but sufficiently affect the litigation so as to be treated as if final. *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982). These include orders that (1) conclusively determine the disputed questions, (2) resolve important questions separate from the merits, and (3) are effectively unreviewable on appeal from a final judgment in the action. *Id.*; *see also Moses H. Cone*, 460 U.S. at 11-12; *Lockyer*, 398 F.3d at 1103. If even one element of this test is not met, there is no basis for immediate appeal. *Truckstop.net, LLC v. Spring Corp.*, 547 F.3d 1065, 1068 (9th Cir. 2008).

**[8]** Here, at a minimum, the third requirement is not satisfied. Plaintiffs could seek relief on appeal to this court, and, if the referral pursuant to Section 638 were improper for any reason, the error could be remedied by setting aside the decision and remanding to the district court for full proceedings there. Plaintiffs contend this is not the case, and suggest our decision in *Johnson v. Wells Fargo Home Mortgage*, 635 F.3d 401 (9th Cir. 2011), disapproved of *any* appellate review of a Section 638 reference. But the question presented there was whether the district court, under the Federal Arbitration Act ("FAA"), could decline to rule on a party's motion to vacate, modify, or amend the arbitration award because it believed the parties had agreed the award would be directly appealed to the circuit court. *Id.* at 407. We concluded the district court could not refuse to entertain the motion because the parties did not agree that no district court review would occur, and, even if they did, the FAA requires a judge "faced with proper and timely motions to vacate and to confirm" an arbitral award to "consider both motions and rule on them accordingly." *Id.* at 410-11, 412. In passing, we noted that "some states have instituted procedures that allow parties to select and compensate a private individual at the trial court level, that is, an arbitrator whose rulings are directly reviewed by appellate courts as if they were decisions of a trial court" and cited Section 638 in a string cite. *Id.* at 408.

*Johnson* did not examine Section 638 and made no holding with respect to it. Indeed, as discussed above, California

courts have consistently construed the provision as *not* disturbing the referring court's ability to correct errors of law, entertain motions for new trials, and so forth. If this case came to us after the district court "rubber-stamped" the referee's decision and declined to entertain any of the complaining party's post-judgment motions, then *Johnson* might have some applicability. If anything, *Johnson* exemplifies why the current appeal is premature: the referee has not rendered a decision and the district court has not taken (or refused to take) any further action on it.

Our ruling today is consistent with the treatment of orders compelling or denying arbitration under the FAA. Interlocutory orders *denying* motions to compel arbitration may be immediately appealed, whereas orders staying proceedings pending arbitration (i.e., a *grant* of a motion to compel arbitration) are not immediately appealable. 9 U.S.C. § 16; *see, e.g.*, *Ventress v. Japan Airlines,* 486 F.3d 1111, 1119 (9th Cir. 2007) (order compelling arbitration and staying case not appealable); *Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable."); *see also Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004) (noting that this dichotomy in the FAA illustrates intent to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible"). An appellate court may later remedy an improper referral to arbitration by vacating the award and remanding for district court proceedings on the merits. *See, e.g.*, *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414 (9th Cir. 1984) (remanding in part where district court should not have compelled arbitration on one claim in case).

Although there are some differences between arbitration and Section 638 reference, both are forms of alternative dispute resolution designed to move disputes out of court and lower the cost of trial proceedings. Plaintiffs offer no convincing reason why stays pending Section 638 reference proceed-

ings should be treated differently from stays pending arbitration, since errors with either may be corrected later on appeal.

**[9]** The collateral order doctrine is to be construed very narrowly. "We have held that '[t]his determination should not be made lightly because the principle that appellate review should be deferred pending the final judgment of the district court is central to our system of jurisprudence.' " *Truck-stop.net*, 547 F.3d at 1068 (quoting *United States v. Amlani*, 169 F.3d 1189, 1192 (9th Cir. 1999)). "Strict application of the requirements is particularly important because, when a court identifies an order as an appealable, collateral one, it determines the appealability of all such orders." *SEC v. Capital Consultants LLC*, 453 F.3d 1166, 1171 (9th Cir. 2006) (per curiam).

> Thus, we are not to consider "the chance that the litigation at hand might be speeded, or a particular injustic[e] averted, by a prompt appellate court decision" when we determine whether a particular order is an appealable, collateral one. We must take a broader view and determine if resolution of the kind of claim in question must *always* be immediately appealable under the collateral order doctrine.

*Id.* (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)). Here, because the alleged errors with referring the dispute under Section 638 will not become "effectively unreviewable on appeal," the requirements of the collateral order doctrine are not satisfied, and the order is not immediately appealable.

**[10]** In sum, we conclude that the district court's order is not final, the Plaintiffs have not been put "out of court" by the order, and the collateral order doctrine is inapplicable because the decision to refer can be reviewed and, if incorrect, later

remedied by this court.[3] As such, the appeal is premature and we lack jurisdiction over it under Section 1291.

**DISMISSED**.

---

[3]Because of our conclusion, we do not decide whether the other requirements of the collateral doctrine test are satisfied. Nor do we express any opinion on the merits of the district court's decision to refer the matter pursuant to Section 638.