Filed 10/27/20

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| MICHAEL S. YU, a LAW CORPORATION, et al., | B304011 |
| Petitioners, | (Los Angeles County Super. Ct. No. BC562415) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| BANK OF THE WEST et al., | |
| Real Parties in Interest. | |


   Petition for writ of mandate.  Randolph M. Hammock, Judge.  Petition granted.
   Shaw Koepke & Satter, Jens B. Koepke; PB Law Group, Luan K. Phan and Jody M. Borrelli for Petitioners.
   No appearance for Respondent.
   Miller Barondess, Brian A. Procel, Mira Hashmall and Colin H. Rolfs for Real Party in Interest Bank of the West.

Valle Makoff, John M. Moscarino; Greines, Martin, Stein & Richland and Kent L. Richland for Real Parties in Interest Commercial Loan Solutions III, LLC and Commercial Loan Solutions, LLC.

———————————

After the referee in a consensual general reference (Code Civ. Proc.,[1] § 638) filed his decisions in the trial court, but before entry of judgment on those decisions, the court entertained motions to set them aside and ordered a new trial to be had by the court, not by the referee.  Michael S. Yu, a Law Corporation, My Law Holdings, LLC, and Michael S. Yu individually (together petitioners), who had prevailed before the referee, petitioned this court for a writ of mandate to compel the trial court to enter judgment on the referee's decisions, or alternatively, to direct the trial court to order a new trial to be heard by the referee.  We issued an order to show cause.

Our review of the statutory scheme compels the conclusion that the trial court had no authority to review the consensual referee's decisions before entering judgment on them.  We further conclude however, that the trial court was authorized to entertain the motions as postjudgment motions and, based on the parties' reference agreement, properly ruled that the new trial would be heard by the court and not by the referee.  Accordingly, we grant the writ petition.

———————————

[1] All further statutory references are to the Code of Civil Procedure.

2

## BACKGROUND

I.      The lawsuit and reference agreement

The underlying lawsuit, brought by petitioners against Commercial Loan Solutions, LLC, Commercial Loan Solutions III, LLC (together, CLS), and Bank of The West (the Bank, and together with CLS, real parties), arose out of the nonjudicial foreclosure of petitioner's property. Real parties moved the trial court to assign all issues in the lawsuit to a referee pursuant to reference clauses contained in certain forbearance agreements. The reference clauses provided, in the section entitled "Jury Waiver and Judicial Reference" (boldface and capitalization omitted), that the parties waived any right to a trial by jury and agreed that in "the event any legal proceeding is filed . . . by or against any party hereto in connection with any controversy . . . arising out of or relating to this agreement or the transactions contemplated hereby or the loan documents . . . . [¶] . . . any claim will be determined by a general reference proceeding in accordance with the provisions of . . . sections 638 through 645.1. The parties intend this general reference agreement to be specifically enforceable in accordance with . . . section 638." (Capitalization omitted.) "The referee shall apply the rules of evidence applicable to proceedings at law in the State of California and shall determine all issues in accordance with applicable state and federal law. The referee shall be empowered to enter equitable as well as legal relief and rule on any motion which would be authorized in a trial, including, without limitation, motions for default judgment or summary judgment. The referee shall report his decision, which

3

report shall also include findings of fact and conclusions of law." (Capitalization omitted.)

II.    The reference and referee's decisions

The trial court granted real parties' motion to compel a judicial reference and assigned the matter to a retired trial court judge.[2] The lawsuit was tried in two phases. After the liability phase, each side filed proposed statements of decision, objections, and other briefing with the referee. The referee then issued a 53-page decision finding in favor of petitioners on 10 causes of action. The referee awarded petitioners over $2 million in damages and granted them equitable relief. In response to the Bank's objections, the referee issued a supplemental decision that corrected typographical errors, but made no substantive changes.

At the close of the punitive damages phase of the trial, the referee assessed $5 million in punitive damages against the Bank. The final decision awarded petitioners costs and fees. Having completed the "consensual judicial reference pursuant to section 638" (capitalization omitted), the referee filed all of his decisions with the trial court.

III.    Attacks on the referee's decisions in the trial court

Before the trial court entered judgment on the referee's decisions, real parties moved to set them aside, arguing that *Calderwood v. Pyser* (1866) 31 Cal. 333 (*Calderwood*) authorized the court to set aside a referee's erroneous conclusions of law

_____

[2] Defendant Delano Retail Center West, LLC, the purchaser at the foreclosure sale, was not a party to the forbearance agreements and so the trial court stayed a quiet title cause of action involving that defendant. That defendant is not a party to this proceeding.

4

based on the facts found in the decisions prior to entering judgment. The Bank alternatively sought entry of judgment on the decisions before setting them aside.

Petitioners argued that the statutes governing references obligated the trial court first to enter judgment on the referee's decisions before review could occur. Petitioners added that any new trial or retrial must take place before the referee, not the court.

The trial court found legal errors in the referee's decisions. Yet, the court was "unsure as to whether it is a better practice to simply enter a judgment in favor of [petitioners] (which essentially adopts the Referee's findings), and then subsequently entertain (and grant) a motion for new trial, per . . . [section] 645, as opposed to simply granting the pending motions. In either approach, however, the same result will be reached. [¶] In either approach, and based upon the record at this time, it is the clear intent of this Court *to not adopt the Referee's findings and awards* in all respects, *and to simply order a new trial on all issues.* This does not mean that this Court is making any opposite finding on any of the issues. It means only that a new trial is to be held on all issues, including the claim for punitive damages. *This new trial is to be conducted before this Court.*" (Original italics omitted, and italics added.) The trial court set a new trial date to retry the entire case.

Petitioners' writ petition ensued. We stayed the trial and issued an order to show cause. We now grant the writ petition.

5

## DISCUSSION

I. The trial court had no authority to review the referee's decisions before judgment was entered on them.

In determining the trial court's authority with respect to a reference, we first review the parties' agreement and the reference order. (§ 643, subd. (b); see *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 463–464 (*SFPP*).) Here, the reference provisions give no guidance. They broadly authorize the referee to determine all issues, to enter equitable and legal relief, and to rule on any motion "which would be authorized *in a trial*." (Capitalization omitted, italics added.) The contracts make no mention of review. In the absence of contractual guidance, we are left to consider the statutes themselves.

We apply well-established rules of statutory interpretation. Our task " ' "is to determine the Legislature's intent so as to effectuate the law's purpose." [Citation.] We begin by examining the statutory language because the words of a statute are generally the most reliable indicator of legislative intent. [Citations.] We give the words of the statute their ordinary and usual meaning and view them in their statutory context. [Citation.] We harmonize the various parts of the enactment by considering them in the context of the statutory framework as a whole.' " (*1550 Laurel Owner's Assn., Inc. v. Appellate Division of Superior Court* (2018) 28 Cal.App.5th 1146, 1151.) "The meaning and construction of a statute is a question of law, which we examine de novo." (*Ibid.*)

A. *The relevant statutes*

References are governed by sections 638 to 645.1. Section 638 provides in relevant part: "A referee may be appointed upon the agreement of the parties . . . or upon the motion of a party to a written contract . . . that provides that any controversy arising therefrom shall be heard by a referee . . . . [¶] (a) To hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision. [¶] (b) To ascertain a fact necessary to enable the court to determine an action or proceeding." Proceedings under subdivision (a) of section 638 are called general references because they authorize the referee to consider any or all of the issues raised, whereas those under subdivision (b) of section 638 are considered special references, as they limit the referee to specific factual findings to aid the trial court in its determination of the action. This case is a section 638, subdivision (a) general, consensual reference.[3]

Nonconsensual references, not at issue here, are governed by section 639. Nonconsensual references are always considered to be special references.

The relevant statutes for our purposes are sections 644 and 645.

Section 644, governing the effect of a referee or commissioner's decision, provides in subdivision (a) that in "the

---

[3] "Although a special reference may be made with or without the consent of the parties, a general reference requires the parties' prior consent so as to avoid an unlawful delegation of judicial power." (*Lindsey v. Conteh* (2017) 9 Cal.App.5th 1296, 1303 (*Lindsey*).)

case of a consensual general reference pursuant to Section 638, the decision of the referee or commissioner upon the whole issue *must stand as the decision of the court*, and *upon filing* of the statement of decision with the clerk of the court, *judgment may be entered thereon in the same manner as if the action had been tried by the cour*t." (Italics added.)

Section 645, titled "Exception and review of referee's decision," expansively states: "The decision of the referee appointed pursuant to Section 638 or commissioner *may be excepted to and reviewed in like manner as if made by the court*. When the reference is to report the facts, the decision reported has the effect of a special verdict." (Italics added.)

Real parties contend that the language of sections 644, subdivision (a) and 645 preserves to the trial court the power to correct errors of law before entry of the general referee's decision as its judgment. They cite *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 (*Tarrant*), to argue that when the Legislature juxtaposes compulsory and permissive verbs " 'in close proximity in a particular context, we may fairly infer the Legislature intended mandatory and discretionary meanings, respectively.' " Accordingly, real parties construe the relevant statutes to mean that once the referee issues a decision and files it with the court, it becomes the decision of the court (§ 644, subd. (a)), who then "treats" it as if it were the court's own decision, meaning, real parties argue, that the trial court may in its discretion enter the decision as its judgment, or not, as the law permits, just as it would with any decision of the court. Then, under section 645, real parties assert, the court may review

8

its decision in "like manner as if made by the court."[4]  Petitioners dispute that the trial court has unfettered control over general referees' decisions before entry of judgment.  All parties believe the trial court had the power to review the referee's decisions for legal error before filing the decisions as its judgment.  However, independently reviewing the statutes here, we disagree and so we issued our order to show cause to clarify what is a somewhat muddled area of the law.

    B.    *Statutory construction*

        1.The reference statutes' language and framework

In "determining whether the Legislature intended a statute to be mandatory or permissive, use in the statute of 'may' or 'shall' is *merely indicative, not dispositive or conclusive.*" (*Tarrant*, *supra*, 51 Cal.4th at p. 542, italics added; cf. *Gutierrez De Martinez v. Lamagno* (1995) 515 U.S. 417, 432, fn. 9 ["shall" means may in some circumstances].)  Thus, we cannot resolve the question of the trial court's authority merely by reference to the mandatory/discretionary dichotomy.

To ascertain legislative intent, we consider the words of sections 644, subdivision (a) and 645 in the context of the statutory framework as a whole, and seek " ' "where reasonably possible, [to] harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and

---

[4] Real parties believe that sections 663a and 659, setting the time for filing notices of motions for vacatur and new trial, confirm that the trial court may adjust a general referee's decision *before entering* that decision as its judgment.  Sections 663a and 659 do not help the analysis.  They do not concern the time to file the actual motions themselves.

effect to all of their provisions." ' " (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 251.)

Viewing section 644, subdivision (a) harmoniously in the context of modern civil procedure, all parties agree that the first clause——"the decision of the referee or commissioner upon the whole issue *must stand as the decision of the court*" (italics added)—means that the referee's decision becomes the trial court's decision when the referee files it. However, use of the word may in the second clause—"upon filing of the statement of decision with the clerk of the court, judgment *may* be entered thereon in the same manner as if the action had been tried by the court" (italics added)—cannot mean that the *trial court* has discretion *whether* to enter judgment. This second clause is directed at the clerk, as use of the word "entered" indicates. Entry of judgment is a ministerial act done by the clerk. (*Casa de Valley View Owner's Assn. v. Stevenson* (1985) 167 Cal.App.3d 1182, 1193.) Section 664 specifies that when, such as here, "the trial has been had by the court, judgment *must be entered by the clerk,* in conformity to the decision of the court, *immediately upon the filing of such decision*." (§ 664, italics added.) That is, once the referee's statement of decision is filed, it becomes the decision of the court and "the clerk enters judgment 'in the same manner as if the action had been tried by the court' " (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2019) ¶ 6:223), i.e., immediately.

It follows that section 645 concerning exception and review, addresses postjudgment procedure. (See *SFPP*, *supra*, 121 Cal.App.4th at pp. 463–464.) In that way, general references preserve "the court's power regarding new trial motions and other *postjudgment* remedies." (*National Union Fire Ins. Co. v.*

10

*Nationwide Ins. Co.* (1999) 69 Cal.App.4th 709, 716, italics added; accord, *Kajima Engineering and Construction, Inc. v. Pacific Bell* (2002) 103 Cal.App.4th 1397, 1401.) Logically, the language in section 645 about exception and review, namely that a general referee's decision "*may* be excepted to and reviewed in like manner as if made by the court" (italics added), means that aggrieved parties have the option to challenge the general referee's decision by bringing a *postjudgment motion* (see e.g., §§ 663a, 657), or by filing an appeal.[5]

Real parties' construction is not tenable for three reasons. First, their reading of the clause, "judgment may be entered thereon" in section 644, subdivision (a) to afford the *trial court* the discretion whether to enter any judgment before reviewing it for legal errors, contradicts the statute's requirement that the general referee's decision "*must* stand" as the court's decision. (Italics added.) Second, real parties' construction reads out of the

---

[5] At least one treatise has concluded that the language of section 645, that the general referee's decision "may be excepted to" (§ 645), "probably means that, after a tentative decision is announced and *before* the referee's statement of decision is signed and filed with the court, the losing party may file objections *with the referee* to the *proposed* findings and conclusions. The referee must consider and rule on the objections (just as a court considers and rules on objections to a proposed statement of decision)." (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2019) ¶ 6:231.1, p. 6-73.) Objections are made to the referee before the decision is filed because once a general referee files a decision with the trial court, the decision "must stand as the decision of *the court*" (§ 644, subd. (a), italics added) and is "conclusive" (*Lewis v. Grunberg* (1928) 205 Cal. 158, 162).

statute the word "entered." Third, real parties' interpretation cannot be squared with the amendments of 2000 creating the statutes' distinction between the effect of a general referee's "statement of decision" on the one hand (§ 638, subd. (a)), and special referee's "report that includes a recommendation" on the other hand (§ 643, subd. (c); see *Lindsey*, *supra*, 9 Cal.App.5th at p. 1303).[6] We shall explain.

### 2. The reference statutes' history

Our conclusion that trial court review of a general consensual referee's decision may be had only in postjudgment proceedings is supported by the relevant history. (*Tarrant*, *supra*, 51 Cal.4th at p. 542.) That history shows that the Legislature intended that the decisions of general referees be binding on the trial court and the reports of all other referees be merely advisory.

### a. *Statutes of 1851*

The Practice Act is the precursor to the Code of Civil Procedure. In effect at the time the Supreme Court decided *Calderwood*, the Practice Act provided in section 182, the

---

[6] *In re Marriage of Demblewski* (1994) 26 Cal.App.4th 232, does not affect our conclusion, even though it is relied on by both sides for their proposition that a party may challenge a general referee's decision before it is entered as the judgment. Any suggestion in *Demblewski* at page 237 that motions may be made to the trial court before judgment is entered on the referee's decision was based on inapt authority. *Martino v. Denevi* (1986) 182 Cal.App.3d 553, 556–557 is a special reference case, and *Salka v. Dean Homes of Beverly Hills, Inc*. (1993) 23 Cal.App.4th 952 was superseded by grant of review.

antecedent of section 638, that a "reference may be ordered upon the agreement of the parties filed with the Clerk, or entered in the minutes:  [¶]  1st.  To try *any or all of the issues* in an action or proceeding, whether of fact or of law; and to report a *judgment* thereon.  [¶]  2d.  To ascertain a fact necessary to enable the Court to proceed and determine the case." (Stats. 1851, ch. VI, p. 79, italics added.)[7]

The derivation of section 639 is Practice Act section 183, which provided that when the parties did *not consent*, the trial court could direct a reference in the following cases:  "1st. When the trial of an issue of fact requires the examination of a long account . . . ; in which case the referees may be directed to hear and decide the whole issue, or report upon any specific question of fact . . .;  [¶]  2d.  When the taking of an account is necessary for the information of the Court before judgment, or for carrying a judgment or order into effect:  [¶]  3d.  When a question of fact . . . arises . . .; or,  [¶]  4th.  When it is necessary for the information of the Court in a special proceeding." (Stats. 1851, ch. VI, § 183, p. 79.)[8]

Section 187 of the Practice Act then read, "The referees shall make their report within ten days after the testimony

---

[7] Section 182 of the Practice Act was amended during the 1865 to 1866 legislative session to add the words "a finding" before "and judgment thereon" and to change "1st" to "First–" and "2d" to "Second–."  (Stats. 1866, ch. DCXIX, § 3, pp. 844–845.)

[8] Sections 184 through 186 of the Practice Act concerned the qualifications for referee (§ 184), the grounds for objections to the choice of referee (§ 185), and how the court addresses objections to the appointment of referees (§ 186).

before them is closed.  Their report *upon the whole issue shall stand as the decision of the Court, and upon filing the report with the Clerk of the Court, judgment may be entered thereon in the same manner as if the action had been tried by the Court.  The decision of the referees may be excepted to and reviewed in like manner as if made by the Court.*  When the reference is to report the facts, the report shall have the effect of a special verdict." (Stats. 1851, ch. VI, § 187, p. 80, italics added.)

### b.     Statutes of 1872

The Legislature enacted the Code of Civil Procedure in 1872, supplanting the Practice Act.  The Legislature split Practice Act section 187 into three separate sections that referred back to section 187.  They provided, section "643.  (§187.)  The referees or Commissioner must report their findings in writing to the Court within twenty days after the testimony is closed, and the facts found and conclusions of law must be separately stated therein.  [¶]  644.  The finding of the referee or commissioner upon the whole issue must stand as the finding of the Court, and upon filing of the finding with the Clerk of the Court, judgment may be entered thereon in the same manner as if the action had been tried by the Court.  [¶]  645.  The findings of the referee or commissioner may be excepted to and reviewed in like manner as if made by the Court.  When the reference is to report the facts, the finding reported has the effect of a special verdict."  (Stats. 1872, ch. VI, §§ 643–645, pp. 166–167.)

### c.     The modern version

In 2000, the Legislature amended section 644, subdivision (a) to refer specifically to "a consensual general reference pursuant to Section 638," and then adjusted pertinent words in

14

the early section 644 and Practice Act section 187 to read (with changes in italics), "*the decision* of the referee or commissioner upon the whole issue *must* stand as the decision of the court, and upon filing of the *statement of decision* with the clerk of the court, judgment may be entered thereon in the same manner as if the action had been tried by the court." (Italics added.) (See Legis. Counsel's Dig., Amends. to Assem. Bill No. 2912 (1999–2000 Reg. Sess.).) The Legislature also changed section 645 by applying it specifically to section 638 consensual references, and labeling the consensual referee's report a "decision." (Legis. Counsel's Dig., Amends. to Assem. Bill No. 2912 (1999–2000 Reg. Sess.) By substituting "must stand" for "shall stand" and "decision" and "statement of decision" for "report" and "findings" in sections 644, subdivision (a) and 645, the Legislature emphasized that the consensual general referee's decision was not simply a finding and report for the trial court's adjustment, but was obligatorily the court's decision.

More important, however, is the crucial difference between the Practice Act and the original Code of Civil Procedure on the one hand, and the modern Code of Civil Procedure on the other hand, that was created by the Legislature's addition of sections 643, subdivision (c) and 644, subdivision (b) in 2000. (Stats. 2000, ch. 644, §§ 8 & 9.) Subdivision (c) of section 643 tightly controls the conduct of section 639 *nonconsensual* references by outlining the contents of the referee's report, providing for objections, and specifying the extensive authority of the trial court upon receipt of the nonconsensual referee's report: After specifying the time for filing responses to the objections, section 643, subdivision (c) provides that the "court shall review any objections to *the report* and any responses submitted to those

15

objections and shall thereafter enter appropriate orders. *Nothing in this section is intended to deprive the court of its power to change the terms of the referee's appointment or to modify or disregard the referee's recommendations, and this overriding power may be exercised at any time, either on the motion of any party for good cause shown or on the court's own motion.*"  (Italics added.)

Then section 644, subdivision (b) establishes that for all references *other than section 638 consensual general references*, "the decision of the referee or commissioner is *only advisory*.  The court may adopt the referee's recommendations, in whole or in part, after independently considering the referee's findings and any objections and responses thereto filed with the court." (Italics added.)

These amendments in 2000 to sections 643 and 644 draw a clear distinction between consensual references (§ 638) and nonconsensual references (§ 639).  For consensual references, section 643 reads simply, "(b) A referee appointed pursuant to Section 638 shall report as agreed by the parties and approved by the court," and section 644, subdivision (a) establishes, as noted, that the consensual general referee's decision "must stand as the decision of the court."  The Legislature added the amendments in 2000 for the express purpose of providing that for all references, *other than consensual references*, "the decision of the referee or commissioner is *only advisory*, and that the court *may adopt* the referee's recommendations in whole or in part *after independently considering the referee's findings* and any objections and responses thereto filed with the court." (Legis. Counsel's Dig., Amends. to Assem. Bill No. 2912 (1999–2000 Reg. Sess.), italics added; § 644, subd. (b).)  Then, by limiting section 645 to general

16

references, the Legislature necessarily confirmed that review of such referees' decisions could only occur by postjudgment procedure.

We glean from this evolution of the reference statutes— from the Practice Act to the modern Code of Civil Procedure— that the Legislature intended in the modern era to give the trial court vast control over nonconsensual referees, from their appointments to their reports, while leaving the authority to delineate consensual general referees' work and decisions to the litigants by contract. Neither the Practice Act nor the early version of the Code of Civil Procedure contained an equivalent to current sections 643, subdivision (c) and 644, subdivision (b). Nor has the Legislature granted similar power to the trial court to control or alter consensual general referees' decisions, leading to the inescapable conclusion that the Legislature did not intend to confer any power of review on the trial court until after entry of judgment on the decision under section 645.[9] The statutory scheme created by the Legislature after 2000 conferred expansive power on the trial court to review and adjust advisory reports of nonconsensual referees before entering them as judgments, while keeping consensual general reference decisions final and binding on the court.

Numerous cases confirm that the "statutes carefully preserve the distinction of special and general reference to

---

[9] The Bank cites the annotations to the 1872 version of section 654, which stated that the referee's report could not be "attacked except for error or mistake of law, shown on its face, or by motion for new trial." That annotation is obsolete given the modern amendments to sections 643 and 644.

comply with the constitutional mandate; a general reference has binding effect, but must be consensual, whereas a special reference may be ordered without consent but is merely advisory, not binding on the superior court." (*Aetna Life Ins. Co. v. Superior Court* (1986) 182 Cal.App.3d 431, 436; *Ellsworth v. Ellsworth* (1954) 42 Cal.2d 719, 723; *Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1522–1523; *Lindsey*, *supra*, 9 Cal.App.5th at pp. 1303–1304; see *Estate of Bassi* (1965) 234 Cal.App.2d 529, 536.)  Indeed, it has long been understood that "mandamus will lie to compel the court to enter judgment on the general referee's report." (Knight et al., Cal. Practice Guide:  Alternative Dispute Resolution (The Rutter Group 2019) ¶ 6:246, p. 6-77.)

*Lewis v. Grunberg*, *supra*, 205 Cal. 158, cited by petitioners, is particularly instructive as it postdates enactment of the Code of Civil Procedure.  The Supreme Court in *Lewis* cited *In re Riccardi* (1926) 80 Cal.App. 66, *Weavering v. Schneider* (1921) 52 Cal.App. 182, and *Clark v. Millsap* (1926) 197 Cal. 765, as "holding the findings *conclusive* where the reference is general, as in the case at bar.  [¶]  '*Upon the filing of the findings of the referee in this cause, judgment should have been entered thereon in accordance with the findings, and for any error committed by the referee, the remedy of the aggrieved party was by motion for a new trial, or other appropriate proceeding.*'" (*Lewis*, at p. 162, italics added.)  Indeed, where the reference is a general one, the decision filed with the trial court " 'stand[s] as the decision of the court.' " (*Lindsey*, *supra*, 9 Cal.App.5th at p. 1304.)  As such it is

18

directly appealable as a binding decision, whereas the report of a special referee is not. (*Ibid.*)[10]

The general, consensual referee's decisions here were binding and stood as the decision of the court when issued, with the result judgment should have been entered thereon immediately by the clerk. (§§ 644, subd. (a) & 664.) The aggrieved party's remedy for any error committed by the referee was by a postjudgment proceeding or appeal.

C. *Calderwood is not controlling.*

Real parties relied primarily on *Calderwood*, *supra*, 31 Cal. at page 337 for their contention that sections 644, subdivision (a) and 645 give the trial court authority to review a general referee's decision for legal errors *before* entering the decision as its judgment.

The action in *Calderwood*, *supra*, 31 Cal. at page 335 was tried by a referee who went beyond the issues and found an

---

[10] The cases real parties rely on actually support our construction. In *National Union Fire Ins. Co. v. Nationwide Ins. Co.*, *supra*, 69 Cal.App.4th at pages 714 to 716, the trial court "adopted" the referee's decision "as the decision of the court, in its entirety" which "preserved the court's power regarding new trial motions and other postjudgment remedies." *Kajima Engineering and Construction, Inc. v. Pacific Bell*, *supra*, 103 Cal.App.4th at page 1401, quoted the above language. In *Old Republic Ins. Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 45 Cal.App.4th 631, 637 to 638, the appellate court analyzed the parties' contract and concluded they agreed to binding arbitration not a general reference. The court noted that general references afford the trial court the power to alter or vacate a referee's award "upon a motion for a *new trial*." (*Id.* at p. 637, italics added.)

19

additional fact that the lawsuit had abated by the plaintiff's divorce and could not be re-prosecuted absent revival requiring the court's permission.  Hence, the referee reported a judgment dismissing the lawsuit for lack of a revivor.  (*Ibid*.)  The Supreme Court found that the referee had erred in finding the action had abated.  (*Id*. at p. 335.)  Concluding that "the referee erred in his conclusions of law" and that on "the facts found upon the issues made by the pleadings the plaintiffs were entitled to judgment" (*id*. at p. 336), the *Calderwood* court *affirmed the trial court's order granting a new trial* (*id*. at p. 338).

In dicta, *Calderwood*, *supra*, 31 Cal. 333 discussed the trial court's authority to set aside a referee's report for legal error before entering judgment.  "*We see no good reason why the County Court might not have set aside the conclusions of law reported by the referee* . . . .  The referee had made his report, but no judgment had been entered upon it, and it was still under the control of the Court. . . . [citation] . . . Where a referee finds the facts upon all the issues, draws an erroneous conclusion of law from the facts found, and reports a judgment in accordance with such conclusion, before judgment [is] entered and while the report is still under the control of the Court, *we can perceive no objection to the Court's setting aside the erroneous conclusion, and directing the proper judgment to be entered.* . . .  The Court, however, under an erroneous impression as to the application of the principle of the case cited, thought otherwise, *and directed the judgment to be entered, and, on application of plaintiffs, afterwards granted a new trial on the ground indicated.*"  (*Id*. at pp. 337–338, italics added.)  Only two published California opinions issued in the 148 years since enactment of the Code of Civil Procedure cite *Calderwood* for the proposition that a trial

20

court may modify a section 638 referee's decision for erroneous legal conclusions before entering judgment on that decision. (*Estate of Bassi*, *supra*, 234 Cal.App.2d 529, 539 & *Clark v. Rancho* (1989) 216 Cal.App.3d 606, 625.)[11]

*Calderwood* provided no indication whether the reference there was consensual or nonconsensual, or general or special, which as explained, are treated differently in the modern era for purposes of trial-court review. The only case that actually addressed the question is *Jackson v. Allen* (1921) 55 Cal.App. 257, 258, which baldly stated that *Calderwood* involved a general reference under Practice Act section 183, subdivision (1).

We conclude that *Calderwood*, *supra*, 31 Cal. 333 is not controlling, irrespective of the kind of reference involved there. As petitioners observe, *Calderwood* is factually distinguished because the appeal there was "from an order granting a new

---

[11] *Estate of Bassi*, *supra*, 234 Cal.App.2d 529, and *Clark v. Rancho*, *supra*, 216 Cal.App.3d 606, cited by real parties did not analyze the type of reference at issue in *Calderwood*. Furthermore, *Estate of Bassi*, at page 539 is distinguishable because the appellate court determined that the parties there had stipulated to a special reference. Thus, the comments in *Estate of Bassi* citing *Calderwood* about the trial court's authority in general references are dicta. *Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.* (9th Cir. 2012) 673 F.3d 1267, cited by real parties does not affect our conclusion. Apart from the fact the " 'decisions of the Ninth Circuit Court of Appeals . . . are not binding on us' " (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 357, fn. 8), *Bagdasarian*, at page 1271 actually cited *Calderwood* as authority for its assertion that "the case may be reviewed by the district court upon a motion for new trial or *other post-judgment motions*." (Italics added.)

21

trial" (*id*. at p. 335), and the Supreme Court held, "Order granting new trial affirmed" (*id*. at p. 338).  Thus, *Calderwood*'s comments about what the trial court *might* have done prior to entering judgment are dicta.  More important, regardless of the nature of the reference there, *Calderwood* is not controlling given the changes to the reference statutes after enactment of the Code of Civil Procedure and the Legislature's express purpose in adding sections 643, subdivision (c) and 644, subdivision (b).

Accordingly, *Calderwood* did not give the trial court here authority to review the referee's decisions before judgment was entered on those decisions.

II.     The trial court did not apply the incorrect standard of review.

Petitioners argued in their writ petition that the trial court applied the incorrect standard of review in that it did not appropriately defer to the referee's factual findings.  They quote from what they call the "heart" of the court's ruling that "the gravamen of the referee's [statement of decision] is based upon a fundamental finding of fact (which was a clear error of law in that it was not supported by the record or evidence presented), to wit, that there was a legally " 'enforceable' " oral agreement of forbearance between [petitioners] and [Bank]."

Yet, this quote omits an important statement from the ruling.  Just before reaching the above conclusion, the trial court stated, "this Court finds and concludes that the Referee's [statement of decision] is fundamentally unsound and unjust, as it is based upon several *errors of law*."  (Italics added.)  That is, contrary to petitioners' argument, the trial court did not determine there was insufficient evidence of an oral forbearance agreement.  Rather, after properly deferring to the referee's

22

factual findings, the court concluded that it was legal error to find *on those facts* that the agreement was enforceable. " 'Whether or not a valid binder exists is a question of fact insofar as a finding comprehends issues relating to the credibility of witnesses or the weight of the evidence, but a question of law insofar as a finding embraces a conclusion that such factual elements do not constitute a valid oral binder.' [Citation.] 'Whether undisputed facts establish the existence of a binder is a question of law.' " (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 419.) No error is shown.

III.    The trial court did not err in ordering that the new trial would be heard by it and not by the referee.

Real parties moved to set aside the referee's decision and the trial court decided "to simply order a new trial on all issues." Petitioners' writ assigns as error the subsequent portion of the trial court's order that the new trial be conducted by the trial court rather than by the referee. In support of that order, real parties cite *Tarrant*, *supra*, 51 Cal.4th at page 543, which stated that "section 638 unmistakably shows a legislative intent to give trial courts discretion not to enforce valid reference agreements." Real parties also cite the trial court's inherent supervisory and administrative powers, and authority to control the litigation before it.

Reviewing the parties' reference agreement (§ 643, subd. (b); *SFPP*, *supra*, 121 Cal.App.4th at pp. 463–464), it authorized the referee to "report his decision, which report shall also include findings of fact and conclusions of law." The agreement empowered the referee to "rule on any motion which would be authorized *in a trial*, including without limitation, motions for default judgment or summary judgment." (Capitalization

23

omitted and italics added.)  The agreement clearly does not authorize the referee to take any further action after he filed his decisions, such as in a postjudgment proceeding.

*Daverkosen v. Kelley* (1872) 43 Cal. 477, issued the same year as the Code of Civil Procedure was enacted, is on point.  Just as here, the reference agreement in *Daverkosen* authorized the referee " 'to take the evidence and report a judgment.' " (*Daverkosen*, at p. 478.)  The trial court granted a new trial to be tried by the same referee.  The Supreme Court agreed with the appellant that that order was erroneous, stating simply, "Prior to the last order the referee had taken the testimony and reported a judgment.  The powers conferred by the stipulation were then exhausted.  When the new trial was granted the parties were restored to the position which they occupied when the issues were originally made.  Either party could then demand a trial by jury, or object to a reference, which, in an action at law, can only be made by mutual consent." (*Ibid*.)

Petitioners rely on *Clark v. Rancho*, *supra*, 216 Cal.App.3d at page 625, which held that the referee there possessed the power both to entertain and decide a motion for new trial and to conduct any new trial.  *Clark* distinguished *Daverkosen v. Kelley* because unlike the reference agreement in the latter case, the stipulation in *Clark* provided, " 'for a complete and final adjudication.' " (*Clark*, at p. 623.)  The powers of the referee here are akin to those of the referee in *Daverkosen*, *supra*, 43 Cal. at page 478, and so *Daverkosen* is controlling.

Under the parties' agreement here, the referee's powers were exhausted when he filed his decisions with the trial court.  Real parties sought a new trial by the court, effectively objecting to the reference.  In the absence of mutual consent for a new

24

reference, therefore, the trial court properly ruled that the new trial be conducted before the court.

## DISPOSITION

Let a peremptory writ of mandate issue ordering respondent trial court to (1) vacate its November 25, 2019 order granting real parties' motions to set aside the decisions of the referee, (2) enter a new and different order denying the motions to set aside the referee's decisions, and (3) enter judgment on the referee's decisions. The trial court shall thereafter enter its order setting a new trial to be conducted before the trial court. The stay dated March 20, 2020 is lifted upon issuance of the remittitur. The parties are to bear their own costs of this proceeding.

CERTIFIED FOR PUBLICATION.


DHANIDINA, J.


We concur:


EDMON, P. J.


EGERTON, J.