Filed 8/8/22 Conteh v. Wymont Services Limited CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALIEU B. M. CONTEH et al., | |
| Plaintiffs and Respondents, | G060074 |
| v. | (Super. Ct. No. 30-2018-01006824) |
| WYMONT SERVICES LIMITED et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Nancy E. Zeltzer, Judge. Affirmed.

Bremer Whyte Brown & O'Meara, Nichole Whyte and Benjamin L. Price for Defendants and Appellants.

Genga & Associates and John M. Genga for Plaintiffs and Respondents.

\*        \*        \*

This is the latest appeal in a long running dispute concerning the operation of African Wireless, Inc.[1] The plaintiffs are Alieu B. M. Conteh and numerous entities (collectively plaintiffs or the Conteh entities), and the defendants are Wymont Services Limited (Wymont) and Jonathan B. Sandler (collectively defendants or Wymont and Sandler). In the present chapter of our saga, we review, yet again, a special motion to strike pursuant to Code of Civil Procedure section 425.16[2] (the anti-SLAPP statute) regarding an amended complaint. Not long ago, we issued an opinion addressing the previous version of the same complaint. (*Conteh et al. v. Wymont Services Limited, et al.* (Nov. 14, 2019, G057161) [nonpub. opn.] (*Conteh I*).) In that opinion, we affirmed the trial court's ruling, determining the defendants had not met their burden to demonstrate the challenged allegations arose from protected activity. The matter was then remanded for further proceedings.

Plaintiffs filed a first amended complaint upon remand and defendants filed another anti-SLAPP motion, challenging a similar set of allegations to those alleged in *Conteh I*, but with revised language. The trial court granted the motion with respect to two lines of one allegation[3] and denied the rest, finding no protected activity was alleged. Why plaintiffs could not have simply used the exact allegations that were already found not to violate the anti-SLAPP statute is unclear, but they decided, for some unknown reason, to open the door to yet another unnecessary anti-SLAPP motion, and defendants

---

[1] More details on the factual background can be found in prior opinions. (See *Lindsey v. Conteh* (2017) 9 Cal.App.5th 1296; *Lindsey et al. v. Conteh et al.* (Jan. 18, 2019, G054219) [nonpub. opn.] (collectively *Lindsey* or the Lindsey case).)

[2] Unless otherwise indicated, subsequent statutory references are to the Code of Civil Procedure.

[3] Plaintiffs conceded those two lines were from the previous version of the complaint and left in the amended complaint inadvertently.

walked through. Once again, we find that no protected activity was alleged, and we therefore affirm the trial court's order.

With respect to plaintiffs' request for attorney fees on appeal, because we do not find this case meets the standard for frivolousness, the request is denied.

I

FACTS

As noted above, the factual background can be delved into at some length in our prior opinions. In brief, in its early days, African Wireless, Inc. (African Wireless or AWN),[4] a Delaware corporation, owned 60 percent of the Congolese entity Congolese Wireless Network SPRL (Congolese Wireless or CWN), while the other 40 percent was owned by Congolese entity Reseau des Telecommunications SARL (Resotel). Congolese Wireless obtained a license from the Congolese government to build and operate a cellular communications network. In 2000, Wymont and several individuals became minority shareholders. To cut to the chase, unhappiness among minority shareholders led to the *Lindsey* action, which ended in a default judgment against Conteh and related entities. Ultimately, however, the Lindsey plaintiffs were awarded 51 shares of Resotel and two shares of Congolese Wireless, the value of which were, for bond purposes, determined to be $93,293,067.

The instant case addresses what occurred after the default judgment and the minority shareholders collection attempts. As we noted in *Conteh I:* "The Conteh entities allege that after the default judgment, Sandler and Wymont obtained an agreement from the other minority shareholders under which Wymont would pay legal

---

[4] In an attempt to avoid an opinion filled with acronyms in an already very complex matter, we refer to entities by the longer versions of their names. The first amended complaint, however, generally uses acronyms.

3

expenses going forward in exchange for certain rights. The Conteh entities refer to this agreement as 'the Minority Contract.'

"While the appeal in *Lindsey II* was pending, the minority shareholders agreed to a conditional settlement in July 2017 that would bring all legal and collections activities to a halt while Sandler tried to sell Congolese Wireless or its interest in Vodacom Congo. Sandler was given 'unfettered discretion' over the sale as long as it met certain minimum requirements. Sandler had 120 days to execute the sale, which, if successful, would result in a mutual general release. Otherwise, the Lindsey action and the minority shareholders' collections would resume. The sale was not consummated and the conditional settlement agreement terminated.

"In July 2018, the Conteh entities, in their individual capacities and as majority shareholders in African Wireless, sued Wymont for breach of fiduciary duty and breach of 'governing corporate documents,' seeking damages and declaratory relief. The complaint alleged that Sandler and Wymont '[blew] up the settlement to get better deals for themselves.' (Capitalization omitted.) Among other theories, the complaint claimed that Sandler 'failed deliberately' so he could try to amend the settlement to '(i) cap the [Conteh entities'] proceeds from, and lower the price at which they would have to agree to, a sale of [Congolese Wireless], so that Sandler and Wymont could pocket the excess; and (ii) cut "side deals" or otherwise enrich himself or Wymont at the expense and to the detriment of all the rest of African Wireless's shareholders . . . .' The complaint also alleged that Sandler had acted outside the conditional settlement to hold himself out to third parties that he had the authority to act for African Wireless.

"Further, in addition to other acts, the complaint alleged that while Conteh had 'sought to return [African Wireless] to some sense of corporate normalcy, . . . Wymont, however, through Sandler, has thwarted all efforts and discussion to such ends by, among other things, threatening legal action against shareholders to prevent them from voting even to retain an investment banker to value [African Wireless] or

4

[Congolese Wireless] and later to negotiate for the sale of one or the other on terms subject to further shareholder agreement.'" (*Conteh I*, *supra*, G057161.)

In *Conteh I,* the trial court found the complaint alleged both protected and unprotected activities. Defendants appealed, arguing the court should have granted its motion as to all of the allegations they sought to strike. We disagreed and affirmed the court's ruling.

On remand, plaintiffs filed their first amended complaint, pleading two causes of action, acts in excess of corporate authority and breach of fiduciary duty. Defendants responded with another motion to strike, targeting the following allegations, which included both causes of action in their entirety.[5]

The following portion of paragraph 36: "Plaintiffs are informed and believe and on that basis allege, and further believe in good faith that discovery in this action will reveal, that Defendants thereafter acted – also in excess of their authority and in breach of their fiduciary duties – to delay any such sale from occurring until they reached a final judgment in the Lindsey Case and could wrest control of AWI away from Plaintiffs. Defendants and their co-plaintiffs in the Lindsey Case in fact did divest Plaintiffs of all of their AWI shares, but by executing on the judgment therein that they knew rested on false facts when they obtained it and certainly by the time they executed upon it. Such conduct deprived Plaintiffs and them alone, since all other shareholders retained their interests in AWI and could obtain value from those interests at any time upon a sale of CWN from obtaining the value of their 70% equity in AWI at the time they owned it. Defendants misconduct thus directly and proximately caused damages to Plaintiffs, according to the very expert retained by Defendants and their co-plaintiffs in the Lindsey Case, in the amount of at least $174,924,498."

---

[5] We omit the allegation as to which the anti-SLAPP motion was granted by the trial court.

5

The entirety of paragraphs 37 through 39, plaintiffs' cause of action for acts in excess of corporate authority:

"37. Plaintiffs reallege and incorporate by this reference each and every allegation in paragraphs 1 through 36, above, as though fully set forth at this point.

"38. Sandler and Wymont have acted in excess of the authority given them by AWI's controlling corporate documentation, including its by-laws and Shareholder Agreement. More specifically, the by-laws do not empower Sandler as a director or Wymont as a shareholder to act as alleged herein and as discovery likely will reveal, including but not limited to: (i) approving the amended CWN articles; (ii) delaying or attempting to thwart a sale of CWN until they could obtain a final judgment in the Lindsey Case and collect on it by seizing all of Plaintiffs' AWI shares; and (iii) refusing to turn over records of interactions with Resotel, CWN, VC, VIL[6] and affiliates and personnel of those entities regarding a possible [sale] of CWN; all to the extreme and unique detriment of Plaintiffs and their majority interest they had owned in AWI.

"39. These and other acts of Sandler and Wymont in excess of their authority have directly and proximately caused damages to Plaintiffs to the extent of their majority interest in AWI and apart from harm to the corporation and its other shareholders, in an amount subject to proof at trial, but at least the approximately $175 million in value that the expert of Defendants and their co-plaintiffs in the Lindsey Case attributed to Plaintiffs' 70% of AWI."

Alternatively, defendants sought to strike the following portion of paragraph 38: "(ii) delaying or attempting to thwart a sale of CWN until they could obtain a final judgment in the Lindsey Case and collect on it by seizing all of Plaintiffs AWI shares."

---

[6] "VIL" refers to Vodacom International Limited, a Mauritius entity. "VC" refers to Vodacom Congo, a joint venture in which VIL owned 51 percent and Congolese Wireless owned the remaining 49 percent.

6

The entirety of plaintiffs' cause of action for breach of fiduciary duty, paragraphs 40 through 44:

"40. Plaintiffs reallege and incorporate by this reference each and every allegation in paragraphs 1 through 36, above, as though fully set forth at this point.

"41. As a director of AWI until spring of 2018, Sandler owed a fiduciary duty to act with complete fairness to its shareholders, including Plaintiffs, by not, among other things, treating them differently or disadvantaging them uniquely. And, under Delaware law, to the extent it purported to exercise majority control over AWI – as it did when its representative, Sandler, executed the amended CWN articles ostensibly on behalf of AWI – Wymont likewise owed such a duty to Plaintiffs. That duty also prohibited Defendants from interfering with the rights of Plaintiffs as majority shareholders and from acting to benefit themselves or their own interests at the expense of Plaintiffs.

"42. Sandler and Wymont have breached fiduciary duties they owed to Plaintiffs, separate from the corporation, to the extent they inflicted injury to Plaintiffs unique to them as majority shareholders, by the acts alleged herein as well as those that discovery in this action likely will reveal, including but not limited to their: (i) approval of the amended CWN articles . . . (iii) refusal to turn over records of interactions with Resotel, CWN, VC, VIL and affiliates and personnel of these entities regarding a possible sale of CWN; all to the extreme and unique detriment of Plaintiffs and their majority interest they had held in AWI.

"43. These and other acts of Sandler and Wymont in breach of their fiduciary duties have directly and proximately caused damages to Plaintiffs to the extent of their majority interest in AWI and apart from harm to the corporation and its other shareholders, in an amount subject to proof at trial, but at least the approximately $175 million in value that the expert of Defendants and their co-plaintiffs in the Lindsey Case attributed to Plaintiffs' 70% of AWI.

7

"44. Defendants have committed the acts alleged above intending to harm Plaintiffs uniquely and to deprive them in conscious disregard of their rights, subjecting them to cruel and unjust hardship. Such malicious and oppressive conduct entitles Plaintiffs to an award of punitive damages, subject to proof in a sum adequate to make an example of and to punish Defendants in light of their net worth."

Finally, defendants sought to strike plaintiffs' prayer for punitive damages: "For punitive damages subject to proof in a sum adequate to make an example of and to punish Defendants in light of their net worth."


II

DISCUSSION

*Law of the Case*

Plaintiffs argue we can and should decide this case on the doctrine of law of the case. """The doctrine of 'law of the case' deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*. The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.""" (*Sefton v. Sefton* (2015) 236 Cal.App.4th 159, 172, fn. 6.)

While the allegations here and those we reviewed in *Conteh I* are similar, they are not, as the trial court noted, in exactly the same form – although plaintiffs could certainly have chosen to use those same allegations. Accordingly, we decline to apply the law of the case doctrine and decide this matter on its merits.


*The Anti-SLAPP Framework and Standard of Review*

As we noted in *Conteh I*: "The anti-SLAPP statute states: 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California

8

Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).) The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case. (See *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68.) The statute is to 'be construed broadly.' (§ 425.16, subd. (a).)

"An '"act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e).)

"To determine whether an anti-SLAPP motion should be granted or denied, the trial court engages in a two-step process. '"First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).)'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)

9

"If that threshold is met, courts then look to the second step, determining whether the plaintiff has demonstrated a probability of prevailing on the merits.  To do so, the plaintiff must state and substantiate a legally sufficient claim (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123), thereby demonstrating the case has at least ""'minimal merit.'""  (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1105.)

"On appeal, '[w]e review an order granting an anti-SLAPP motion de novo, applying the same two-step procedure as the trial court.'  (*Cole v. Patricia A. Meyer & Associates, APC*, *supra*, 206 Cal.App.4th at p. 1105.)  In conducting our review, '[w]e consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based."'  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)"  (*Conteh I*, *supra*, G057161.)


*Protected Activity*

The first step of the anti-SLAPP analysis requires us to decide whether the challenged claims arise from defendants' acts in furtherance of their right of free speech or right of petition.  (§ 425.16, subd. (e).)  "'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.'  [Citations.]  'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action."  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)  But the protected activity must do more than simply touch upon the prior litigation – it must "aris[e] from" it.  (§ 425.16, subd. (b)(1).)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim."  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062-1063.)  "Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16.  [Citations.]  Allegations of protected

activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394.)

Paragraph 36, set forth in full *ante*, alleges that defendants acted in excess of their authority and in breach of their fiduciary duties to delay a sale until a final judgment had occurred in *Lindsey*, which would allow them to take control of African Wireless, thereby depriving plaintiffs of the stock's value while they still owned it. Therefore, defendants claim this allegation "arise[s] from" their conduct of obtaining and executing on the judgments. But plaintiffs argue the allegations regarding the *Lindsey* judgment merely provide background and are not the basis for relief. As the trial court noted: "Plaintiffs argue that the damages alleged in paragraph 36 are based on the alleged acts of Defendants that prevented Plaintiffs from selling their shares before Defendants executed on the judgment. Plaintiffs further contend that the reference to the judgment in the Lindsey Case merely frames the period of Defendants' actionable conduct."

We agree with the trial court that when viewed in full and in context, plaintiffs seek relief for conduct outside the scope of the *Lindsey* case. Other allegations earlier in the same paragraph show that the actions complained of include executing amended articles of Congolese Wireless and giving an individual named Feruzi Kalume Nyembwe, a representative of minority shareholder Resotel, complete control over Congolese Wireless's affairs. The reference to *Lindsey*, the judgment, and collection efforts only provide context.

The next challenged portions of the complaint are paragraphs 37 through 39, the entirety of the cause of action for acts in excess of corporate authority. Paragraph 37 merely alleges paragraphs 1 through 36. Paragraph 39 is the claim for damages for the cause of action. That leaves us with paragraph 38, which is set forth in full *ante*. In sum, it alleges that Sandler and Wymont acted in excess of the authority given them by African Wireless's corporate documents, including "(i) approving the amended CWN

11

articles; (ii) delaying or attempting to thwart a sale of CWN until they could obtain a final judgment in the Lindsey Case and collect on it by seizing all of Plaintiffs' AWI shares; and (iii) refusing to turn over records of interactions with Resotel, CWN, VC, VIL and affiliates and personnel of those entities regarding a possible [sale] of CWN; all to the extreme and unique detriment of Plaintiffs and their majority interest they had owned in AWI."[7]

Most of the conduct here has nothing to do with protected activity, including amending the Congolese Wireless articles and refusing to turn over records. The one allegation that does reference *Lindsey*, delaying the sale of Congolese Wireless until a final judgment in *Lindsey* could be obtained, alleged conduct that occurred prior to that judgment; therefore, it does not meet the "aris[ing] from" test. Defendants have not met their burden to demonstrate this is protected activity.

Next, defendants contend the entirety of plaintiffs' claim for breach of fiduciary duty, paragraphs 40 through 44, should have been stricken. Paragraph 40 realleges the previous paragraphs, and paragraphs 43 and 44 allege plaintiffs' entitlement to compensatory and punitive damages. That leaves paragraphs 41 and 42.

Paragraph 41 primarily alleged Sandler's breach of fiduciary duty to African Wireless shareholders by amending its corporate articles. It also alleged to the extent it purported to exercise majority control over African Wireless, Wymont likewise owed such a duty. "That duty also prohibited Defendants from interfering with the rights of Plaintiffs as majority shareholders and from acting to benefit themselves or their own interests at the expense of Plaintiffs." This simply does not allege protected activity.

---

[7] These allegations are quite similar to those which we held were not protected activity in *Conteh I*. "1) Sandler held himself out as having the authority to act for African Wireless after such authority had lapsed; 2) Sandler refused to turn over records of interactions regarding a potential sale of African Wireless or Congolese Wireless; 3) Sandler wrongly approved amended Articles of Congolese Wireless. . . ." (*Conteh I, supra*, G057161.)

12

As to paragraph 42, the trial court struck one subparagraph, which is no longer at issue. But defendants claim the rest should also have been stricken, which alleged Sandler and Wymont breached their fiduciary duties by actions including "(i) approval of the amended CWN articles; . . . (iii) refusal to turn over records of interactions with Resotel, CWN, VC, VIL and affiliates and personnel of these entities regarding a possible sale of CWN . . . ." We find no protected activity alleged here, and again, defendants have not met their burden.

Finally, defendants move to strike the prayer for punitive damages. Defendants claim this paragraph was "necessarily and expressly based on the foregoing allegations of protected activity." But we found no protected activity in those allegations, and accordingly, the prayer for punitive damages is proper.

In sum, we found the trial court properly found no allegations of protected activity (other than two lines that are not the subject of this appeal) and denied the bulk of defendants' anti-SLAPP motion.

*Attorney Fees*

Under the anti-SLAPP statute, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." (§ 425.16, subd. (c)(1).)

The relevant standard for assessing whether a motion is frivolous and without merit is whether any reasonable attorney would objectively conclude the motion (or appeal) is totally devoid of merit. (*Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 683-684.)

Given our findings in *Conteh I*, the outcome of this appeal was rather predictable. But we do not find that it rises to the level of frivolousness. We cannot say,

however, that the same will be true if similar allegations come before us in a third anti-SLAPP appeal in this matter.

## III

## DISPOSITION

The order is affirmed.  Defendants are to pay plaintiffs' costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.